### RUSSELL REALTY CO. et al. v. HALL et al.
### (No. 8554.)

(Court of Civil Appeals of Texas. Dallas. July 2, 1921. Rehearing Denied Oct. 15, 1921.)

**1. Injunction ⬤⟿58—Restrictive covenants enforced at instance of individual purchasers of lots.**

Compliance with restrictive covenants imposed upon the sale of lots in a subdivision for the purpose of prescribing and preserving the residential character of the property will be enforced by injunction at the instance of individual purchasers of lots.

**2. Covenants ⬤⟿51(2)—Covenant prohibiting construction at less than certain cost not avoided by constructing portion of building with intent to add in future.**

Owner of lot could not avoid restrictive covenant prohibiting construction of residence thereon at less than a certain cost, by constructing merely a portion of a residence at a cost of less than the specified amount, with the intention at some future date to build additions which would finally make the cost conform with the requirements.

**3. Covenants ⬤⟿77—When one not a party to a restrictive covenant can enforce it.**

Whether a person not a party to a restrictive covenant has the right to enforce it depends upon the intention of the parties, to be ascertained from the language of the deed itself, construed in connection with the circumstances existing at the time the deed was executed.

**4. Covenants ⬤⟿51(2)—Compliance with covenant as to cost of construction dependent on actual expenditure.**

Compliance with restrictive covenant as to cost of construction of dwelling depends on amount actually expended in the construction of the building, and does not require the construction of a house which would have cost required amount at the time the subdivision was laid out, and the general building plan, pursuant to which such restrictive covenants were incorporated in the deeds, was originally formulated.

**5. Covenants ⬤⟿79(3)—Purchasers of lots in subdivision by deeds containing building covenants could not enforce covenants relating to lots in other subdivision.**

Purchasers of lots in a subdivision by deeds containing restrictive covenants pursuant to a general building plan could not enforce restrictive covenants relating to lots in other subdivision subsequently platted by same owners.

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Suit by E. K. Hall and others against the Russell Realty Company, J. A. Heiskell, Frank Smith, and other s. Judgment for plaintiffs, and defendants appeal. Judgment affirmed as to defendant Frank Smith, affirmed in part and reversed in part as to defendant Heiskell, and reversed and rendered as to other defendants.

George T. Burgess, of Dallas, for appellants.

Parks & Hall, of Dallas, for appellees.

HAMILTON, J. This suit was instituted by appellees against appellants to enjoin the construction by appellants of any residence in a certain alleged restricted district at a cost of less than $1,000 on the basis of the cost of material and labor in 1912. That is, appellees sought to restrain the building of a residence by appellants, or any of them, in said described district, except such as would have cost at least $1,000 in 1912, and also asked the court to require appellants to remove within 60 days any dwelling house already constructed in whole or in part at a cost of less than that above indicated or constructed, in violation of any other applicable restrictive provision.

It was alleged that Russell Realty Company, on the 1st day of June, 1912, and thereafter, owned what is known as Russell Realty Company's Melrose addition in Dallas, Tex., and was interested in the matter of laying out, platting, and selling all the various residential lots therein; that as an inducement to the public, as well as to the plaintiffs, to buy such lots and for the general purpose of enhancing the value of the respective lots in this addition, Russell Realty Company and those under whom they claim entered upon a general building scheme to make the lots more attractive for residential purposes, and in carrying out the scheme caused to be inserted in deeds to all purchasers, or the majority of purchasers, a restrictive clause, containing substantially this language:

"And also provided and conditioned that no buildings or improvements shall be erected or placed on said property except dwelling houses and outhouses, and no dwelling house costing less than $1,000 shall be erected or placed on said property. Houses to be built not less than twenty-five (25) feet from the front property line. These covenants to run with this property forever."

It was alleged that defendants all began to violate this restriction in 1920 by building and permitting to be built upon certain lots in Melrose addition small and unsightly structures to be used as dwelling houses, and costing much less than $1,000; and it was also alleged that certain of defendants were either offering lots for sale in Melrose addition with the proposal that the above

⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

copied restrictive clause should be omitted from the deed of conveyance, or were selling lots containing such clause, and at the same time were urging the purchasers to violate it.

Appellees alleged that they owned lots in Melrose addition, which lots they had bought relying upon the above restrictive clause contained in deeds made to them by Russell Realty Company, and in the belief that said general building plan adopted, as alleged, would be kept and carried out in good faith. They further alleged that under the influence of such inducements they had constructed residences upon the lots purchased by them, and were residing with their respective families in their homes thus acquired. They alleged that the structures already erected by appellees and those about to be erected in violation of the aforesaid restrictive covenant written in deeds, as evidencing the general plan, would be occupied by people undesirable to them for neighbors; that the effect would be to render uncomfortable their surroundings; impose upon them annoyance and inconvenience; and probably force them to abandon their homes. It was alleged that since this covenant was originally inserted in the first deeds executed in conveying lots situated in said addition the cost of building houses had doubled, and that therefore the spirit and intention of the restrictive covenants in existing deeds and the general building plan originally formulated could not be given effect unless the owners of improved lots inserted in their deeds to purchasers a clause requiring the construction of dwellings thereon at a cost of at least $2,000. It was also alleged that appellants had never waived any right with reference to any covenant or adopted plan under which they purchased their homes.

The appellants answered, saying, in effect, that the general plan existed, and that the restrictive covenants were contained in all deeds, with reference to a portion of 45½ acres of land platted by Russell Realty Company on June 28, 1912, under the name of Melrose addition; and appellants, substantially and in effect, admitted the existing binding force of the restriction alleged by appellees as to this particular plat, which was recorded in the records of Dallas county. But they alleged that subsequently on July 3, 1914, Russell Realty Company had subdivided another portion of the 45½-acre tract under the name of second section of Melrose addition, and had filed a map of this part of the tract; that the plat of it embraced all the portion of the 45½ acres lying south of Burleson boulevard; and that when this plat was filed Russell Realty Company had no general plan or intention of making restrictions which would apply to the property embraced by it, and that therefore there was no agreement or understanding with purchasers of lots in the portion first platted that restrictions would be inserted in deeds to purchasers in the last portion platted, or that any particular requirements as to a general plan of building would be enforced. It was alleged that three of appellants, John Ellis, F. S. Brittain, and Albert Inskeep, were purchasers of lots according to the second plat. The answer alleged that Russell Realty Company had not violated any restriction existing with reference to the first Melrose addition, and that it had no intention of attempting to violate any such restriction; but that no general plan existed whereby building in the second Melrose addition should be restricted; that no such plan with reference to it had been formulated; and that there was no intention of devising a general building plan therein or executing deeds to lots therein containing restrictions like those applicable to buildings in the first Melrose addition.

It was alleged in behalf of Inskeep that he had erected an outhouse on the extreme back end of his lot, which was not prohibited by his deed. It was alleged on behalf of Brittain that he had started the erection of a house on his lot which had cost him $625.75, and that it was his intention "to erect rooms on the front end of the present structure which will complete a dwelling house, which, when done, will exceed the cost of $1,000, as provided in the deed." It was alleged in Ellis' behalf that he had begun the erection of a dwelling house, but had not completed it; that he had already expended on it more than $800; that he had placed it 50 feet from the front property line of the lot so as to allow space to build in front of the present structure a 16-foot room and an 8-foot porch; that when this is done the total improvements will exceed in cost $1,000; that he is living in the completed part of the house, and as fast as he can accumulate the money for the purchase of lumber he is going to complete the house, which he expects to do not later than October 1, 1920. The defendants Frank Smith and J. A. Heiskell admitted that they had erected buildings in the first Melrose addition on lots owned by them, and were living in these houses with their families. But they alleged the houses to be in the nature of outhouses. Appellants filed a motion to dissolve a temporary injunction previously granted.

The case was tried by the court without a jury. The court by its judgment found that the appellants Heiskell and Smith had erected houses in the Melrose addition, costing less than $1,000 at the present price of labor and material, and that appellants Ellis, Brittain, and Inskeep each had erected a house in the second section of Melrose addition costing less than $1,000 at the present price of labor and material. The court also found that Heiskell had constructed still another house in the first Melrose addition which cost $1,-

000 at the present price of material, but construed the restriction in the deed to Heiskell to require the construction of a house of the character which would have cost not less than $1,000 in 1912. The motion to dissolve was overruled, the injunction was made perpetual, and each of the appellees was ordered to remove within 90 days the house erected by him, unless within that period he should make such house conform to the restrictive provision as to cost of $1,000.

[1] It is well settled that the owner of a tract of land, which he intends to sell for residential purposes, may validly impose restrictive covenants upon the sales of lots for the purpose of prescribing and preserving the residential character of the property, and that compliance with such restrictions will be enforced by injunction at the instance of individual purchasers of lots out of the tract to which the restrictions are made to apply. Hooper v. Lottman, 171 S. W. 270; Wilson Co. v. Gordon, 224 S. W. 703. This proposition is not questioned in this case. The contention involves a controversy only as to whether or not the restrictive covenant conceded to apply to lots in the first Melrose addition has been violated by appellants, and whether or not any restrictive covenant based upon a general plan with reference to lots in the second Melrose addition ever existed to be violated. These are questions of fact to be disposed of under the evidence. However, intermixed with them are presented questions of law as to the construction of the restriction requiring dwelling houses to cost at least $1,000, written into deeds to lots in the tract platted in 1912, and also as to the right of appellees (all of whom own lots in the first section of Melrose addition, platted in 1912, and none in the second section thereof, platted in 1914), to enforce restrictive covenants inserted in deeds to lots in the second section of the addition, conceding that such restrictive covenants were made under a general plan applicable to the second section, platted in 1914.

The court found as a fact that appellant J. A. Heiskell had erected a dwelling upon lot No. 18, block No. 3, in the first section of Melrose addition, at an actual cost of less than $1,000, and that appellant Frank Smith had erected on lot No. 16, block 3, of said addition a house at an actual cost of less than $1,000.

The court found that the appellants F. S. Brittain, Albert Inskeep, and John Ellis had erected upon their lots in the second Melrose addition houses which, in each instance, actually cost less than $1,000.

The court found that J. A. Heiskell had erected a house on lot No. 18, block No. 2, in the first section of Melrose addition, at a cost of $1,000 at the present cost of labor and material. But the court, being of the opinion that the restriction in the deed to

this lot providing for the construction of a dwelling at a cost of not less than $1,000 meant the character of house it would cost $1,000 to construct in 1912, held that the $1,000 structure on the lot did not meet the requirements, and the order of injunction and for removal was made to apply to this house as well as to all the others constructed by the several respective appellants.

The judgment of the court against Heiskell with reference to lot No. 18 in block 3, Melrose addition, and also against Smith with reference to lot No. 16 in block 3 of said addition will be sustained. But the judgment against Heiskell with reference to lot No. 18 in block No. 2 and the judgment as against the appellants Russell Realty Company, Inskeep, Brittain, and Ellis we do not think is warranted under the law and facts of the case.

[2, 3] The evidence was sufficient, we think, to justify the court's conclusion that the houses erected by Heiskell and Smith at a cost of less than $1,000 each in the first division of Melrose addition were built for dwelling houses, and in deliberate violation of the restrictions generally written into deeds in carrying out the general building plan for that addition. The proof showed that in each instance houses had been built which were being occupied as homes, and that they cost less than $1,000. The evidence in each instance is such as may support the conclusion that the houses were not intended as outhouses, but as dwelling houses for the owners. That the general building scheme exists as enforceable in this particular addition is not at all controverted, either in the appellants' pleadings or their evidence. Appellants could not avoid enforcement of the restriction by declaring that, although the houses which they had built and were occupying did not conform to the restriction, they intended at some future date to build additions which would finally make the cost $1,000, in conformity with the requirements.

"Whether a person not a party to a restrictive covenant has the right to enforce it depends upon the intention of the parties in imposing it. This intention is to be ascertained from the language of the deed itself, construed in connection with the circumstances existing at the time it was executed. The vendor's object in imposing the restrictions must in general be gathered from all the circumstances of the case, including the nature of the restrictions. If the general observance of the restriction is in fact calculated to enhance the values of the several lots offered for sale, it is an easy inference that the vendor intended the restriction for the benefit of all the lots. The most familiar cases in which courts of equity have upheld the right of owners of land to enforce covenants to which they were not parties are those in which it has appeared that a general building scheme or plan for the development of a tract of land has been adopted, designed to make it more attractive for residen-

tial purposes by reason of certain restrictions to be imposed on each of the separate lots sold. This forms an inducement to each purchaser to buy, and it may be assumed that he pays an enhanced price for the property purchased. The agreement therefore enters into and becomes a part of the consideration. The buyer submits to a burden upon his own land because of the fact that a like burden imposed on his neighbor's lot will be beneficial to both lots. The covenant or agreement between the original owner and each purchaser is therefore mutual. The equity in this particular class of action is dependent as much on the existence of the general scheme of improvement or development as on the covenant, and restrictions which contemplate a general building plan for the common benefit of purchasers of lots are recognized and enforced by courts of equity at the instance of the original grantor or subsequent purchasers. So the general rule may be safely stated to be that where there is a general plan or scheme adopted by the owner of a tract, for the development and improvement of the property, by which it is divided into streets and lots, and which contemplates a restriction as to the uses to which lots may be put, or the character and location of improvements thereon, to be secured by a covenant embodying the restriction to be inserted in the deeds to purchasers, and it appears from the language of the deed itself, construed in the light of the surrounding circumstances, that such covenants are intended for the benefit of all the lands, and that each purchaser is to be subject thereto, and to have the benefit thereof, and such covenants are inserted in all the deeds for lots sold in pursuance of the plan, a purchaser and his assigns may enforce the covenant against any other purchaser and his assigns, if he has bought with actual or constructive knowledge of the scheme, and the covenant was part of the subject-matter of his purchase. De Gray v. Monmouth Beach Club House Co., 50 N. J. Eq. 329, 24 Atl. 388; Hano v. Bigelow, 155 Mass. 341, 29 N. E. 628." Hooper v. Lottman, supra.

The proof was insufficient to establish Russell Realty Company's connection with any act which supplied a basis for any character of relief against it.

[4] There is nothing in the language of the restrictive covenant inserted in Heiskell's deed to lot No. 18 in block No. 2, or any other deeds, to warrant the conclusion that the parties to the transaction meant that the relative values of a dollar in 1912 and in future years should be ascertained in prospect of constructing a house and the construction cost so computed as to cause the expenditure of whatever number of dollars might be required to match the purchasing power of $1,000 in 1912. To give this effect to the covenant would be to read into the provision a meaning different from that ordinarily understood to be embodied in such language, and would tend to inconvenience, confusion, and impracticability. Such construction is not only a most unusual one, but is also a most unnatural one. We construe the provision to express the understanding that, whenever a building should be erected on the lot, it should require the expenditure of at least $1,000 upon construction at the time of building. Ordinarily, when an agreement is made for the expenditure of a given amount of money at a future date, the amount is considered only in a quantitative sense with reference to the dollar as a unit, and not in the exclusive sense of the buying power of a dollar at the time of the transaction. It is expected that the undertaking will be satisfied when the stated amount of money is expended. Such intention will be presumed unless a different one is expressed in the stipulation which reflects the agreement. We therefore think the court was in error in ordering the removal of Heiskell's house from lot No. 18, in block No. 2, or requiring the expenditure of any more money upon the house. The provision will be held to mean that the actual cost at the time of construction should be at least $1,000, and not an amount equivalent in buying power to the buying power of $1,000 in 1912.

[5] The proof showing without conflict that all the appellees lived in the section of Melrose addition platted and laid out in 1912, and that the appellants Brittain, Inskeep, and Ellis had constructed their houses in the section platted and laid out in 1914, we do not perceive how any of appellees' legal rights or interests could justify their interfering or complaining of violations of restrictive covenants in deeds conveying lots in a tract platted two years after the plat with reference to which their lots were sold by deeds containing restrictions under a general building plan. The covenant under which they bought extended only to lots in the first Melrose addition. As to all lots in this section the restrictive covenant is mutually binding between all purchasers and between each of them and the original owners who sold to them with reference to the general building scheme. But purchasers' rights under restrictive covenants relating to lots in this first plat cannot be extended beyond its borders. They are circumscribed and confined by the territorial limits of the plat with reference to which the purchasers bought, and purchasers cannot be granted relief against the construction of buildings of an obnoxious kind in an adjoining section, even though such buildings are constructed in violation of restrictive covenants, which apply to the adjoining territory. We do not deem it necessary to dispose of the contention as to whether or not appellants Ellis, Inskeep, and Brittain are bound by restrictive covenants relating to a general building plan in the second section of Melrose addition. But in this connection, we will say that the evidence upon which appellees rely to show the existence of such binding restrictions seem to be so frail, vague, and indefinite that we would not be willing to

permit a judgment based upon it to stand, in view of the positive evidence in the record that no scheme or plan for the restriction of this section had been inaugurated.

In conformity with the views expressed the judgment of the court below against J. A, Heiskell as to lot No. 18, in block 3, Melrose addition, is affirmed; and the judgment against Frank Smith as to lot No. 16, in block No. 3 of said Melrose addition is affirmed.

The judgment against J. A. Heiskell as to lot No. 18 in block No. 2 of Melrose addition is reversed, and judgment is rendered denying all the relief prayed for with reference to the building on this lot.

The judgment against the appellants Russell Realty Company, F. S. Brittain, John Ellis, and Albert Inskeep is reversed, and judgment is rendered, denying all the relief sought against each of them.

It is accordingly so ordered.