**LEE, Plaintiff-Appellant, v. H. & S. BUILDING CO., Defendant-Appellee.**

Ohio Appeals, Second District, Montgomery County.

No. 1943.   Decided December 4, 1948.

William L. Struck, Hollencamp & Hollencamp, Dayton, for plaintiff-appellant.

Pickrel, Schaeffer & Ebeling, Dayton, Bradley Schaeffer of counsel, for defendant-appellee.

## OPINION

By HORNBECK, J.

The appeal on questions of law and fact is from a judgment of the Common Pleas Court dismissing plaintiff's petition. The suit is to enjoin the defendant from erecting dwelling houses on certain lots owned by it in McKnight's Eastwood Plat, City of Dayton, in claimed violation of an uniform building restriction carried in the deed for said lots.

There is no issue as to the validity or binding effect of the restriction.   It is "That the said premises shall be used only for dwelling purposes and only a dwelling house and private garage may be erected thereon; said dwelling must cost at least $4,500.00." It is the claim of plaintiff that the defendant "has begun construction of dwelling houses of which the cost of each is less than $4,500.00."   This is denied

by the defendant and is the sole, determinative issue in the cause.

The dwellings under consideration are of the prefabricated type of structure some of the materials therein having been partially assembled before delivery to the site of their erection. Other essentials to the structure, such as excavating, cement work, carpentry, plumbing, plumbing fixtures, electrical wiring and fixtures, heating, painting, etc., had to be completed on the site of the building and this work was carried on either by employees of the defendant or by sub-contractors employed by it.

The testimony of the plaintiff is that of experienced builders from the City of Dayton, who admit they are not conversant, except in a general way, with prefabricated building but state that a dwelling of the dimensions of that under construction by the defendant and differing only in that part which may be said to be prefabricated, can be erected, in what they term the conventional manner, at a cost varying from a little below to a little above $4,000.00. In the figure supporting their estimate it appears that the defendant has paid more on many of the items making up the cost of the completed structure than, in their judgment, is the reasonable cost therefor. Most of the difference represented by their estimates, as compared to the expenditure of defendant, is in the cost of the frame work or that part which is purchased as a prefabricated unit from the company which provided it. In no instance is any profit or allowance for general supervision of construction included in the foregoing estimates nor would any of plaintiff's witnesses say that he would build the house under consideration for as little as $4,500.00. This last development is significant for in the last analysis, the question is what is the reasonable cost of placing the completed houses in question on the lots of defendants.

It may be said that, if a moderate allowance be made for general supervision of construction, which we are satisfied is a proper item of cost, the total cost of the completed structure upon plaintiff's own testimony would be approximately $4,500.00. It is manifest that in determining whether or not the defendant has substantially complied with the restriction we may not subject his expenditures to the exacting test of experts. Defendant could not, without adding materially to the final costs of its dwellings, have had the benefit of the expert building cost analyses which is forthcoming on this record.

The defendant, however, did not elect to rely upon the close question whether plaintiff had, on his own evidence, failed

to make proof of his case but fully and completely developed its expenditures making up the total cost of the houses under consideration.

On behalf of the defendant it appears that it has spent on an average for each of three completed houses, identical with those in process of erection in the plat in question, the sum of $6,009.41. This total expenditure is not disputed nor is there anything in the record that casts any doubt upon it or upon the good faith of the defendant in making it. But, it is urged by the plaintiff that the defendant has not received value for the money it has spent and that the completed house will not be forth $4,500.00, and that value is tantamount to "cost" as employed in the language of the restriction.

Mr. Carl F. Boester, Director of Housing Research, Purdue University, widely experienced in prefabricated construction both experimentally and as a builder, testified that he had supervised the construction of twenty-three houses, identical with those to be erected by the defendant, within a period of ninety days prior to the date of trial, at a cost of $5,700.00, each, independent of profit or charge for supervision. Harold Conrey, a building contractor from Cincinnati fixes the cost there of construction of the house in question at $6,113.00, in a market where the cost is a little below that in the Dayton area. Mr. Conrey was a District Director of the Federal Housing Administration, Cincinnati, for the years 1934 to 1939 and says that it is absolutely impossible to build the house under consideration for $4,000.00. Chester Edwards, a contractor builder of Hamilton, Ohio, states that the cost of building the house in Hamilton, with no profit to the builder, is $5,800.00 to $5,900.00; that the material alone will cost $4,500.00. The sub-contractor plumber and the carpenter contractor on the houses which defendant had completed testified to the cost to the defendant of the work which they had done confirmatory of the statement of Mr. Holden, President of the defendant company of the sums it had expended for their services. Sam Wonderly, the contractor for defendant, estimates the cost of the houses under consideration will be $6,180.90, each.

It is evident that the plaintiff has been unable to prove that the defendant has violated the terms of the restriction.

We have discussed the testimony of defendant at considerable length because it establishes, in our judgment, that it will place on its lots houses which when completed, will cost far in excess of $4,500.00 each; that such expenditure will be made in good faith and that the reasonable value of each

dwelling, so erected, will be equal to or greater than the minimum requirement of the restriction.

In so holding, we do not say that the defendant will receive full value for the money it will expend. In probability it will not. But what can we buy today that upon technical analysis will return to us full value for our expenditure? Neither is it necessary for us to express any opinion as to the comparative merits of prefabricated and conventional construction nor as to the reasonableness of the cost of the prefabricated units used in the houses here considered. Certain it is, that the economy is not carried in to the selling price of these units that should be effected by the use of lighter framing material, the purchase in great quantities, the use of uniform lengths of ply wood and lumber and the ability to manufacture and deliver in considerable numbers. Reduction in cost will come, if ever, when production and demand are more nearly equal.

The restriction here is confined solely to the cost of the building under the conditions now obtaining and in the market as we find it. The restriction does not affect the type of construction, the material to be used, the style of architecture nor the dimensions of the structure. Had the original platter desired to further control the type of dwelling that should be erected in the sub-division, he could have done so by a different and more rigid form of restriction. Whether or not the original owner approves of prefabricated construction as against the more conventional type is of no consequence as the language of the restriction will not permit of differentiation.

It is probable that the plaintiff and other property owners in the addition where the buildings of defendants are now being erected are and, it may be, have good reason to be offended by the appearance of these dwellings in comparison with their own homes. The only test that can be employed as to the right of the defendants to erect the structures is whether or not, in the acute housing situation and in the present market, each costs not less than $4,500.00.

Plaintiff cites Snyder v. Lakewood Land and Improvement Co., 20 O. C. C. N. S. 295; affirmed **90 Oh St 382.** The restriction there prohibited the erection of a house on the premises at a cost of less than $3,500.00. Defendant moved a barn onto the premises, made some repairs and moved into it. It was admitted that the value of the building after the alterations was less than $3,500.00. The Court supported the enforcement of the restriction. It is urged that, notwithstanding the fact that the defendant here may have expended more than $4,500.00 in the cost of its dwelling, the value of the structure

is less than $4,500.00. If a builder spends $4,500.00 in the cost of a dwelling and such sum is a reasonable expenditure under all the circumstances, it is to be presumed that he has a completed structure of the value of the amount that he has put into it. Cost and value, in this situation, are synonymous. In the cited case, the Court had under consideration a barn which had long been constructed. Manifestly, its value then was the only practicable test of its cost in the light of the language of the applicable restriction. In the situation thus developed it was proper to speak of the value of the barn after improvements as its cost. In any event, there was no issue, either as to the cost or the value.

Another case cited is Emory v. Sweat, 9 Tenn. App. 167, holding that the reasonable cost is the basis of determination whether or not compliance has been observed of a restriction fixing a minimum cost in the erection of a dwelling. We are in full accord with this decision.

Russell Realty Co. v. Hall, 233 S. W. 996, is authority to the effect that cost, as stated in a building restriction, is the amount actually expended at the time the house is constructed. This obviously is the intent of such restrictions and becomes especially material in times like these when costs are inordinately high and the purchasing power of the dollar is relatively low, notably in the housing field.

This is not a close case on the record and we have developed it at length in part, because, strange as it seems, there are but few cases on the point here involved, viz; the application of minimum cost requirements in restriction covenants in deeds.

Upon careful consideration of the record, we do not find that the defendant has violated the terms of the restriction in its deed in that it is erecting a dwelling house on any of its lots which will not cost, at least, $4,500.00.

Judgment for the defendant. Petition dismissed.

WISEMAN, PJ, and MILLER, J, concur.