**Affirmed in part, Reversed and Rendered in part, and Memorandum Opinion filed April 16, 2019.**



In the

# Fourteenth Court of Appeals

---

### NO. 14-17-00480-CV

---

### DEALER COMPUTER SERVICES, INC., Appellant

v.

### DCT HOLLISTER RD, LLC; STAPLES, INC.; NORTHWEST CROSSING ASSOCIATION, INC.; FIRSTSERVICE RESIDENTIAL HOUSTON, INC.; KEITH GROTHAUS; VICTORIA BROWN; AND JARED HOTHAN, Appellees

---

**On Appeal from the 334th District Court
Harris County, Texas
Trial Court Cause No. 2016-17197**

---

### O P I N I O N

This appeal largely turns on standing and appellant's failure to address all grounds for summary judgment on appeal. In the trial court, appellant Dealer Computer Services, Inc. ("Dealer CS") asserted two claims against its across-the-street neighbor, DCT Hollister Rd, LLC ("DCT"), and DCT's tenant, Staples, Inc.

("Staples"). Dealer CS claimed DCT and Staples had violated deed restrictions and created a nuisance. Dealer CS also asserted claims for negligence and gross negligence against its community association (Northwest Crossing Association, Inc.), community association directors (Keith Grothaus, Jared Hothan, and Victoria Brown), and property management company (FirstService Residential Houston, Inc.). The negligence claims were based on the alleged failure of these parties to enforce deed restrictions. In three separate motions, all defendants moved for summary judgment. The trial court granted each motion, dismissing Dealer CS's claims with prejudice. The trial court also awarded attorney's fees to defendants' attorneys.

In nine issues, Dealer CS appeals the dismissal of its claims on summary judgment and the awards of attorney's fees. We conclude Dealer CS lacks standing to assert deed-restriction violations. Because the trial court's award of attorney's fees was authorized by deed restrictions not enforceable by, or applicable to, Dealer CS, we reverse the trial court's award of attorney's fees. With respect to Dealer CS's other causes of action, we affirm the judgment because Dealer CS failed to address all grounds on which summary judgment may have been granted. Accordingly, we affirm the dismissal of claims and reverse the award of attorney's fees.

## I.  BACKGROUND

Dealer CS owns an office building in the community known as Northwest Crossing. In 2014, DCT acquired the property and warehouse across the street from Dealer CS's office building. DCT's tenant, Staples, uses the warehouse as a "fulfillment center." In 2015, DCT and Staples expanded the warehouse.

Northwest Crossing contains four sections built in three different stages. Sections 1 and 2 were established in 1975 under section 1 and 2 deed restrictions.

2

Section 3 was established in 1980 with its own set of restrictions. Section 4 was established in 1981 with yet another set of restrictions. Although DCT's warehouse is across the street from Dealer CS's office building, the warehouse and the office building are in different sections of Northwest Crossing. DCT's warehouse is in section 3 while Dealer CS's office building is in section 4. Section 3 is governed by section 3 restrictions, and section 4 is governed by section 4 restrictions.

Northwest Crossing Association, Inc. (the "Association") administers deed restrictions in all sections of Northwest Crossing. The enforcement provision of section 3 restrictions provides that the Association may enforce section 3 restrictions "individually and as representative of all Property Owners in Northwest Crossing, Section 3." The enforcement provision further provides that any section 3 property owner may enforce the restrictions if the Association fails to do so.

In 2016, weeks after the completion of the warehouse expansion, Dealer CS filed suit against DCT and Staples, alleging the expansion violated section 3 restrictions and created a nuisance. According to Dealer CS, the expansion violated the restrictions because: (1) construction of the building was not approved in writing; (2) loading docks face the street and neighboring property; (3) loading docks lack screening; (4) there is encroachment on setback lines; (5) there is inadequate "green space"; and (6) there is inadequate parking. Dealer CS also included as defendants the Association; its directors, Grothaus, Hothan and Brown; and the property management company, FirstService Residential Houston, Inc. (collectively, "Association Defendants"). Dealer CS alleged Association Defendants were liable for negligence and gross negligence in failing to enforce the deed restrictions.

DCT, Staples, and Association Defendants filed three separate motions for

3

traditional summary judgment, each of which the trial court granted in full. The trial court rendered final judgment in favor of all defendants and awarded attorney's fees to defendants.

## II. ANALYSIS

Dealer CS presents nine issues on appeal. Dealer CS argues that the trial court erred by deciding the following issues in favor of DCT, Staples, and Association Defendants on summary judgment: (1) standing; (2) amendment; (3) duty; (4) nuisance; (5) limitations; (6) laches, waiver, and estoppel; and (7) settlement and release. Dealer CS also argues that the trial court erred when it (8) overruled Dealer CS's objections to untimely filed evidence,[1] and (9) awarded attorney's fees based on summary monthly totals.

### A.  Standard of review

We review a trial court's granting of a summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Id.* Where, as here, a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, we must affirm summary judgment if any of the grounds advanced is meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989). We must affirm if an appellant fails to challenge all grounds on which summary judgment may have been granted. *Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970).

---

[1] We do not address this issue because it is not necessary to the disposition of this appeal. *See* Tex. R. App. 47.1. The evidence at issue is not relevant to this court's reasons for affirming summary judgment.

*Traditional.* Courts properly render traditional summary judgment if the motion and evidence show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). A defendant moving for summary judgment must conclusively disprove at least one element of the plaintiff's claim or prove every element of an affirmative defense. *Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 282 (Tex. 1996).

Once the movant facially establishes its right to summary judgment, the burden shifts to the nonmovant to present a material fact issue that precludes summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979). Evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions considering all the summary-judgment evidence. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755–57 (Tex. 2007) (per curiam).

*No evidence.* A no-evidence motion for summary judgment is essentially a motion for a pretrial directed verdict and is governed by the standards of Texas Rule of Civil Procedure 166a(i). *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). After an adequate time for discovery, a party without the burden of proof may, without presenting evidence, seek summary judgment on the ground that there is no evidence to support one or more essential elements of the nonmovant's claim or defense. Tex. R. Civ. P. 166a(i).

After the movant specifically states the elements for which there is no evidence, the burden shifts to the nonmovant to produce more than a scintilla of probative evidence raising a genuine issue of material fact on those elements. *See id.*; *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). More than a scintilla of evidence exists when reasonable and fair-minded persons could differ

in their conclusions. *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 625 (Tex. 2018). Less than a scintilla of evidence exists if the evidence creates no more than a mere surmise or suspicion of fact regarding a challenged element. *Forbes Inc. v. Granada Bioscis., Inc.*, 124 S.W.3d 167, 172 (Tex. 2003). Unless the nonmovant produces summary-judgment evidence that raises a genuine issue of material fact, the trial court must grant summary judgment. Tex. R. Civ. P. 166a(i). If the nonmovant satisfies its burden of production on the no-evidence motion, then the trial court cannot properly grant summary judgment. *See Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009).

## B.   Standing

First, we address whether Dealer CS, who owns property in section 4, can enforce deed restrictions applicable to section 3. On summary judgment, DCT and Staples argued that Dealer CS lacked standing to assert claims based on violations of section 3 deed restrictions because Dealer CS did not own property in section 3 and was not a party to section 3 deed restrictions. Dealer CS argues on appeal that the trial court erred in granting summary judgment based on lack of standing. Dealer CS concedes that it does not own property in section 3, but argues that it nonetheless has standing to seek enforcement of section 3 deed restrictions. Dealer CS contends that the four sections of Northwest Crossing were developed in accordance with a common scheme or plan of development, and therefore, each property owner in the development has standing to enforce section deed restrictions against any other property owner in the development. Dealer CS contends, therefore, that because it owns property in section 4, it has standing to enforce section 3 restrictions against DCT and Staples.

Standing is implicit in the concept of subject-matter jurisdiction, and subject-matter jurisdiction is essential to the authority of a court to decide a case.

*Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993).[2] We review standing under the same standard by which we review subject-matter jurisdiction generally. *Id.* at 446. Whether the trial court has subject-matter jurisdiction is a question of law that we review de novo. *Tex. Dep't of Transp. v. A.P.I. Pipe & Supply, LLC*, 397 S.W.3d 162, 166 (Tex. 2013); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

A restrictive covenant such as a deed restriction "is a contractual agreement between the seller and purchaser of real property." *Ski Masters of Tex., LLC v. Heinemeyer*, 269 S.W.3d 662, 668 (Tex. App.—San Antonio 2008, no pet.). Ordinarily, only the contracting parties and those in direct privity with the contracting parties have standing to enforce restrictive covenants. *See, e.g.*, *Davis v. Skipper*, 83 S.W.2d 318, 321–22 (Tex. 1935); *Ski Masters*, 269 S.W.3d at 668. Dealer CS was not party to section 3 deed restrictions, and section 3 deed restrictions do not list Dealer CS as a party who may enforce section 3 deed restrictions. Dealer CS does not dispute that it lacks standing under the terms of the deed restrictions themselves. The enforcement provision of section 3 deed restrictions states that the Association or section 3 property owners may enforce section 3 deed restrictions; they do not provide for enforcement by section 4 property owners or property owners in other sections. Dealer CS nonetheless contends that it has standing to enforce the restrictions because the property is operated under a common scheme or plan. DCT and Staples respond that sections

---

[2] "Texas law traditionally has required a claimant to possess a common[-]law or a statutory right of action or, in public rights cases, to have a personal interest in the enforcement of the public right distinct from and more palpable than the general public's interest before commencing a civil action." William V. Dorsaneo, III, *The Enigma of Standing Doctrine in Texas Courts*, 28 REV. LITIG. 35, 35 (2008). In 1993, a majority of the Texas Supreme Court "replaced these traditional ideas with federal standing doctrine and elevated the law of standing to jurisdictional status." *Id.* (citing 852 S.W.2d at 445–46).

3 and 4 are separate and distinct subdivisions, pointing out that they were created in different stages, each with its own set of restrictions.

Under Texas law, "[a] property owner may subdivide property into lots and create a subdivision in which all property owners agree to the same or similar restrictive covenants designed to further the owner's general plan or scheme of development." *Jeansonne v. T-Mobile West Corp.*, No. 01-13-00069-CV, 2014 WL 4374118, *4 (Tex. App.—Houston [1st Dist.] Sept. 4, 2014, no pet.) (mem. op.). When property has been developed under such a general plan or scheme of development, each property owner in the development has standing to enforce deed restrictions against other property owners within the development.[3] *Country*

[3] In appellate briefing, the parties argue about the application of the implied reciprocal negative easement doctrine (IRNE). In its sur-reply, Dealer CS concedes that IRNE does not apply to this case, but argues that the existence of a common plan or scheme is the touchstone issue, not application of IRNE. Dealer CS asserts that IRNE is only one way of showing a common plan or scheme. DCT asserts that IRNE is the same as the common plan or scheme doctrine. Because it is not necessary to the disposition of our case, we do not address whether IRNE is equivalent to or encompassed by the "general plan or scheme" doctrine. *But see Evans v. Pollock*, 796 S.W.2d 465, 472 (Tex. 1990) (stating IRNE was addressed in *Curlee v. Walker*, 244 S.W. 497, 498 (Tex. 1922), as connected to the general plan of development concept although *Curlee* involved whether owner of lot subject to restrictive covenant had standing to assert restrictive covenant in another landowner's deed and did not require application of IRNE); *Ski Masters*, 269 S.W.3d at 669–70 (discussing difference between standing based on implied mutuality of covenants and standing based on IRNE and explaining "the analysis of whether a general plan or scheme of development exists is the same whether a party is attempting to enforce" a restriction based on mutual covenants or IRNE). As discussed below, in this case, the "general plan or scheme" doctrine does not apply for purposes of IRNE or otherwise.

We note, however, that although Dealer CS abandons IRNE in its sur-reply, Dealer CS asserted the application of the doctrine in its petition. Dealer CS's third amended petition states:

> [T]he purported amendments would violate the implied negative reciprocal easement that attached to the property when the deed restrictions were imposed and the property was acquired and improved in reliance on those restrictions. *Evans v. Pollock*, 796 S.W.2d 465, 466 (Tex. 1990); *Ski Masters of Texas, LLC*, 269 S.W.3d 622, 668–[69] (Tex. App.—San Antonio[] 2008, no pet[.]). The implied negative reciprocal easement doctrine derives from the venerable and long-standing authority first articulated by the Texas Supreme Court nearly a century ago in *Curlee v. Walker*, 112 Tex. 40, 44 ([] 1922).

*Cmty. Timberland Vill., L.P. v. HMW Special Util. Dist.*, 438 S.W.3d 661, 667–78 (Tex. App.—Houston [1st Dist.] 2014, pet. denied); *Calvary Temple v. Taylor*, 288 S.W.2d 868, 872–73 (Tex. App.—Galveston 1956, no writ). The leading case outlining this doctrine is *Hooper v. Lottman*, 171 S.W. 270 (Tex. App.—El Paso 1914, no writ). *Curlee v. Walker*, 244 S.W. 497, 498 (Tex. 1922) (quoting *Hooper* at length and describing the case as setting out the "correct rules"); *Country Cmty. Timberland Vill.*, 438 S.W.3d at 667 (describing *Hooper* as the "seminal case regarding enforcement of restrictive covenants by persons who were not party to the covenants"); *Interstate Circuit, Inc. v. Pine Forest Country Club*, 409 S.W.2d 922, 926 (Tex. App.—Houston 1967, writ ref'd n.r.e.) (describing *Hooper* as "the leading case" and "generally cited as authoritative by the courts of Texas"). *Hooper* explained that the application of the rule must be determined based on consideration of the language of the deed and "circumstances existing at the time it was executed." 171 S.W. at 271–72.

The "general plan or scheme" doctrine does not authorize owners of lots in previously or subsequently platted subdivisions to enforce the covenants of property in other subdivisions. *See Russell Realty Co. v. Hall*, 233 S.W. 996, 999 (Tex. App.—Dallas 1921, writ dism'd w.o.j.) (when developer subdivides single parcel of land by filing two plats, imposing deed restrictions on first section, buyers of lots in second section had no standing to enforce deed restrictions on first section). Courts have held that where the grantor's entire tract of land is developed in separate sections and not as a single unit, there is no general plan or scheme that would permit owners in all the subdivisions to enforce restrictive covenants against each other. *See id.*; *see also Jobe v. Watkins*, 458 S.W.2d 945, 948 (Tex. App.—Fort Worth 1970, writ ref'd n.r.e.) ("The law is that property owners in one subdivision of an addition have no standing to enforce deed restrictions imposed

on property located in a separate and distinct subdivision."); *Wald v. West MacGregor Protective Assoc.*, 332 S.W.2d 338, 340 (Tex. App.—Houston 1960, writ ref'd n.r.e.) (citing *Russell Realty*, 233 S.W. 996, and *Moody v. City of Univ. Park*, 278 S.W.2d 912 (Tex. App.—Dallas 1955, writ ref'd n.r.e.)); *Moody*, 278 S.W.2d at 923 ("Property owners in another subdivision have no standing to enforce deed restrictions imposed upon property in a separate and distinct subdivision."); RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 2.14 illus. 11 (2018).

*Russell Realty Co. v. Hall* is on point. In *Russell Realty*, the Dallas Court of Civil Appeals held that property owners in one subdivision could not enforce covenants against owners in another subdivision where the grantor had developed the land progressively by filing separate plats. 233 S.W. at 999. The court explained:

> [P]urchasers' rights under restrictive covenants relating to lots in this first plat cannot be extended beyond its borders. They are circumscribed and confined by the territorial limits of the plat with reference to which the purchasers bought, and purchasers cannot be granted relief against the construction of buildings of an obnoxious kind in an adjoining section, even though such buildings are constructed in violation of restrictive covenants, which apply to the adjoining territory.

*Id*.

The Texas Supreme Court indicated approval of similar reasoning in *Evans v. Pollock*, 796 S.W.2d 465, 472 (Tex. 1990). In *Evans*, while discussing the application of the implied reciprocal negative easement doctrine,[4] the court cited *Duvall v. Ford Leasing Development Corp.*, 255 S.E.2d 470 (Va. 1979), with approval for the proposition that "when a larger tract is subdivided into sections

---

[4] *See supra* note 3.

10

and lots in stages, for purposes of the implied reciprocal negative easement doctrine, each separate recording created a separate and distinct subdivision with its own set of restrictions benefiting and burdening only the land in that particular subdivision." *Id.*

In *Duvall*, the Supreme Court of Virginia held that sections of a community developed in stages were not developed under a general plan or scheme of development:

> As has been noted, Belle Haven was developed in stages, the various sections having been created from time to time over a period of years by the recordation of a number of deeds of dedication and plats. We believe that each of these recordings created a separate and distinct subdivision, with its own set of restrictions benefiting and burdening only the land in that particular subdivision. While the restrictions imposed in each dedication were similar to those applicable to other sections of the development, the course of conduct pursued by the developer did not indicate an intention to establish, as among the owners of lots in the different sections, reciprocal benefits and obligations entitling the owner of the property in one section to enforce a restriction against the owner of property in another section.

255 S.E.2d at 473; *see also Evans*, 796 S.W.2d at 472 n.2 (citing *Bernui v. Tantallon Control Comm.*, 488 A.2d 186 (Md. Ct. Spec. App. 1985), as "another case following the *Duvall* rationale that each stage of development is a separate and distinct subdivision with its own set of restrictions").

Dealer CS contends that all four sections of Northwest Crossing are "one subdivision" that was developed according to a general plan or scheme, but Dealer CS does not dispute that Northwest Crossing was developed in stages. Dealer CS's characterization of Northwest Crossing as "one subdivision" is not supported by the documents Dealer CS submitted on summary judgment. To its consolidated response to the summary-judgment motions of DCT, Staples, and Association

11

Defendants, Dealer CS attached copies of the separate plats filed for each section of Northwest Crossing. Dealer CS also attached copies of separate restrictions for sections 1 and 2, section 3, and section 4, which showed that the restrictions were filed in the county's property records at different times. Restrictions for sections 1 and 2 were filed in 1975. Restrictions for section 3 were filed in 1980. Restrictions for section 4 were filed in 1981.

Dealer CS points to the November 1980 amendment to the Articles of Incorporation of the Association as evidence that all four sections were developed according to a general plan or scheme. The amendment states that it is "contemplated" that the "same Uniform Plan" which applied to sections 1 and 2 "may be adopted for . . . Section 3 . . . and for all future sections of Northwest Crossing which may be subdivided out of the unplatted acreage." However, the factual recitals of the amendment itself show that Northwest Crossing was not developed as a single contemporaneous subdivision. The amendment refers to sections 1, 2, and 3 of Northwest Crossing as separate subdivisions. The amendment also references the separate plats of sections 1, 2, and 3, noting that the plat for section 1 is recorded in "Volume 216, Page 103, of the Map Records"; the plat for section 2 is recorded in "Volume 218, Page 49, of the Map Records"; and the plat for section 3 is recorded in "Volume 297, Page 48, of the Map Records." This evidence of plats and deed restrictions filed separately for different sections shows that the development of the sections was done in stages. Section 3 was created as a separate and distinct subdivision, with its own set of restrictions applicable as a general scheme only in that subdivision; consequently, section 3 restrictions benefit and burden only the land in section 3. *See Russell Realty Co.*, 233 S.W. at 999; *Duvall*, 255 S.E.2d at 473; RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 2.14 illus. 11.

Because the undisputed evidence shows the sections of Northwest Crossing were developed in stages, the "general plan or scheme" doctrine does not apply and Dealer CS lacks standing to enforce section 3 restrictions. The trial court did not err by dismissing Dealer CS's claims against DCT and Staples for violations of deed restrictions. Dealer CS's first issue is overruled.

Having determined that Dealer CS lacks standing to enforce section 3 deed restrictions, we need not address Dealer CS's second issue concerning amendment of the deed restrictions. *See* Tex. R. App. P. 47.1. Nor do we need to address Dealer CS's fifth, sixth, and seventh issues, addressing DCT's and Staples's affirmative defenses to the claim for violation of deed restrictions: limitations; laches, waiver,[5] and estoppel; and settlement and release. *See id.*

Our determination that Dealer CS lacks standing also affects the trial court's award of attorney's fees to DCT, Staples, and Association Defendants. A prevailing party may not recover attorney's fees unless such recovery is authorized by contract or statute. *Willacy Cty. Appraisal Dist. v. Sebastian Cotton & Grain, Ltd.*, 555 S.W.3d 29, 52 (Tex. 2018). In this case, DCT, Staples, and Association Defendants sought attorney's fees pursuant to provisions of section 3 deed restrictions. Because we have concluded the section 3 restrictions were created to benefit and burden only section 3 property owners, section 3 restrictions concerning attorney's fees do not obligate Dealer CS to pay attorney's fees to DCT, Staples, or Association Defendants. *See Arlington Home, Inc. v. Peak Envtl. Consultants, Inc.*, 361 S.W.3d 773, 783 (Tex. App.—Houston [14 Dist.] 2012, pet. denied) ("There is no evidence that the buyer and seller intended also to obligate themselves unilaterally to pay attorney's fees to persons who, because they were

---

[5] DCT and Staples did not argue waiver as an affirmative defense to deed restriction violations on summary judgment. Nonetheless, Dealer CS addresses it along with laches and estoppel on appeal.

not parties to the contract, would not themselves be obligated under the provision."). Because DCT, Staples, and Association Defendants were not entitled to recover attorney's fees from Dealer CS under section 3 deed restrictions and no other basis was identified to support the award of attorney's fees, we reverse attorney's fee awards to DCT, Staples, and Association Defendants. Having reversed the fee awards on this ground, we need not address Dealer CS's ninth issue concerning attorney's fees.

## C. Unchallenged ground for summary judgment

We turn to Dealer CS's third issue, "Did the Association Defendants have 'no duty' to address a known violation of the restrictions?" Dealer CS asserted causes of action against Association Defendants for negligence and gross negligence, arguing they had a duty to enforce deed restrictions against DCT.

As an initial matter, we note that Association Defendants asserted two arguments in support of summary judgment on Dealer CS's negligence and gross negligence claims. First, Association Defendants argued summary judgment was proper because the Association had a right—not a duty—to enforce the restrictive covenants.[6] Second, Association Defendants argued that Dealer CS's claims were expressly barred by the restrictions themselves. Association Defendants pointed to section 5.04 of section 3 restrictions, which provides that the neither the Board of Trustees of the Association nor any of its agents shall be liable for any alleged negligence in connection with the approval, disapproval, or failure to approve building or improvement plans. Dealer CS did not respond to this argument on summary judgment or address it in its opening brief.

Association Defendants argue on appeal that summary judgment should be

---

[6] Association Defendants point out that the restrictions themselves say the Association "may" enforce the restrictions.

14

upheld because Dealer CS failed to challenge Association Defendants' argument that Dealer CS's claims were expressly barred by the restrictions, and this was an independent ground for summary judgment. When, as in this case, the order granting summary judgment does not specify the grounds upon which the trial court relied, we must affirm if an appellant fails to challenge all grounds on which summary judgment may have been granted. *See Malooly Bros.*, 461 S.W.2d at 121 ("The judgment must stand, since it may have been based on a ground not specifically challenged by the plaintiff.").[7] Although we now hold section 3 restrictions do not apply to Dealer CS, we must affirm even if summary judgment may have been rendered improperly on the unchallenged ground. *See McCrary v. Hightower*, 513 S.W.3d 1, 5 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (quoting *Ellis v. Precision Engine Rebuilders, Inc.*, 68 S.W.3d 894, 898 (Tex. App.—Houston [1st Dist.] 2002, no pet.) ("If summary judgment may have been rendered, properly or improperly, on a ground not challenged, the judgment must be affirmed.")).

In its reply brief, Dealer CS indirectly challenges the merits of Association Defendants' express-bar argument, asserting "[t]his is not a case where the association exercised its discretionary authority in the approval process, nor is [Dealer CS] bringing claims based upon the approval or disapproval of DCT's application." However, we do not generally consider issues raised for the first time in a reply brief and decline to do so here. *See* Tex. R. App. P. 38.3 ("The appellant may file a reply brief addressing any matter in the appellee's brief."); *Priddy v. Rawson*, 282 S.W.3d 588, 597 (Tex. App.—Houston [14th Dist.] 2009, pet.

---

[7] In *Malooly*, the court also held that the "best approach" in appealing summary judgment would be to assert a point of error "which simply complains, 'THE TRIAL COURT ERRED IN GRANTING THE MOTION FOR SUMMARY JUDGMENT.'" *Id.* Under this general point of error, all grounds expressly raised in the trial court may be argued on appeal. *Id.* Dealer CS did not assert such a general point of error in this case.

denied). Because Dealer CS presented no argument challenging the application of section 5.04 in its original appellate brief, we overrule Dealer CS's third issue and affirm the summary judgment as to Dealer CS's claims for negligence and gross negligence.

## D.    No summary-judgment evidence

In its fourth issue, Dealer CS asserts that the summary-judgment evidence raised a genuine issue of fact on the existence of a nuisance. Dealer CS alleges the warehouse expansion constitutes a nuisance because of increased truck traffic on surrounding streets, and because it is an "eyesore." Dealer CS states that the existence of nuisance is a fact issue and cites evidence of the "discomfort" and "annoyance" caused by the expansion. Dealer CS cites an expert report that describes "numerous safety hazards" including drainage issues from a detention pond.

Although Dealer CS pleaded a "nuisance" cause of action and the parties describe and discuss this cause of action as a "nuisance" claim, the Texas Supreme Court held in *Crosstex North Texas Pipeline, L.P. v. Gardiner*, that nuisance is not a cause of action. 505 S.W.3d 580, 594, 601, 604 (Tex. 2016). A nuisance does not itself constitute wrongful conduct or cause of injury; rather, nuisance is a type of injury. *Id.* at 588 ("Taking this opportunity to clarify the law, we hold that the term 'nuisance' refers not to a defendant's conduct or to a legal claim or cause of action but to a type of legal injury involving interference with the use and enjoyment of real property.").[8] The court explained that three different causes of action may lead to liability for a nuisance injury: (1) intentional conduct causing a nuisance, referred to by the court as "intentional nuisance"; (2) negligence; and (3)

---

[8] The court addressed private nuisance in *Crosstex*, recognizing public nuisance as a "distinct condition[] with different requirements and limitations." 505 S.W.3d at 591 n.3.

abnormally dangerous or ultra-hazardous activities causing a nuisance, referred to by the court as "strict-liability nuisance." *Id.* at 604–09.

Dealer CS has not alleged intentional conduct or negligence with respect to its alleged nuisance injury. Dealer CS has alleged that "[t]he operation of a substantial trucking facility . . . is clearly abnormal and out of place in its surroundings." As such, Dealer CS's claim, if any, would be a claim for "strict-liability nuisance." *See Crosstex*, 505 S.W.3d at 607 ("The third category of nuisance-based claims . . . includes those based on 'other conduct, culpable because abnormal and out of place in its surroundings.'").

Staples contends that because of the type of nuisance alleged, Dealer CS bore the burden of establishing that the activity at issue "arises only out of conduct that constitutes an 'abnormally dangerous activity' or involves an abnormally 'dangerous substance' that creates a 'high degree of risk' of serious injury." Staples asserts that it moved for, and was granted, summary judgment on the basis that Dealer CS could provide no evidence that the construction of the expansion or Staples's activities met this standard. Staples also contends it sought and received summary judgment because Dealer CS did not respond to this argument.

Staples is correct that "to the extent that a claim exists in Texas based on nuisance created by 'abnormal and out of place' conduct," the conduct at issue must be "abnormally dangerous activity" or involve an "abnormally 'dangerous substance.'" *Id.* at 609. ("[T]he abnormal and out of place conduct must be abnormally 'dangerous' conduct that creates a high degree of risk of serious injury."). Staples is also correct that Dealer CS did not respond to its "no-evidence" argument on summary judgment. What is less clear is that Staples moved for no-evidence summary judgment.

Staples's motion for summary judgment was not entitled "traditional" or

17

"no-evidence," and it did not include the standard of review for either type of summary judgment. Staples clearly and repeatedly asserted a no-evidence ground attacking an essential element of Dealer CS's strict-liability cause of action. However, the first sentence of Staples's motion states that the motion is filed pursuant to Texas Rule of Procedure 166a(c) and there is no reference to Texas Rule of Procedure 166a(i).

This court has followed the Texas Supreme Court holding that clear headings outlining which summary-judgment arguments are traditional or no-evidence are not required. *See Chrismon v. Brown*, 246 S.W.3d 102, 120–21 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (supp. op. on reh'g) (citing *Binur v. Jacobo*, 135 S.W.3d 646, 650–51 (Tex. 2004)); *see also Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). "According to the Texas Supreme Court, if the movant clearly sets forth its no-evidence grounds and meets Rule 166a(i)'s requirements, then the movant has asserted these no evidence grounds." *Chrismon*, 246 S.W.3d at 120–21; *but see BP Oil Pipeline Co. v. Plains Pipeline, L.P.*, 472 S.W.3d 296, 315 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) ("[I]t is relevant and revealing that BP recited the legal standard for a traditional motion but not the legal standard for a no-evidence motion.").

Staples clearly set forth no-evidence grounds. Staples asserted, "Nowhere in its Petition has Plaintiff alleged nor can it provide evidence that the construction of the expanded Facility or Staples's activities at the Facility are 'abnormally dangerous' such that there is a 'high degree of risk or serious injury.'" Staples further asserted:

> Plaintiff can present no evidence to suggest that there is any risk of "serious injury" above and beyond the baseline level of risk which already exists simply by driving on city streets. Moreover, Plaintiff has presented no evidence to suggest the injuries complained of stem

from anything but routine activities regularly expected in that community.

Staples's arguments in this regard meet the requirements of 166a(i); Staples asserted no evidence of an essential element of Dealer CS's strict-liability nuisance claim for which Dealer CS bore the burden of proof at trial: the conduct at issue must be an "abnormally dangerous activity" or involve an "abnormally 'dangerous substance.'" *See* Tex. R. Civ. P. 166a(i); *Crosstex*, 505 S.W.3d at 609; *Chrismon*, 246 S.W.3d at 120–21.

In response to Staples's summary-judgment motion, Dealer CS did not even argue that Staples's conduct was abnormally dangerous or involved an abnormally dangerous substance. Instead, Dealer CS argued that "[t]he operation of Staples's warehousing operation in Northwest Crossing is abnormal and out of place in its surroundings." *But see Crosstex*, 505 S.W.3d at 609 ("[T]he mere fact that defendant's use of its land is 'abnormal and out of place in its surroundings' will not support a claim alleging nuisance."). Dealer CS argued that heavy truck traffic "clogs the streets" and "has caused significant deterioration of the infrastructure in the community." Dealer CS also argued that truck traffic "poses a continual threat to the electrical and communication networks that are critical to the operation of Plaintiff's business." Dealer CS also argued that the additional paving implemented "resulted in substantial flooding and drainage issues that burden" DCT's facility and the surrounding properties and community. None of these arguments assert that Staples engaged in abnormally dangerous conduct that created a high risk of serious injury.

More importantly, Dealer CS presented no evidence that Staples engaged in abnormally dangerous conduct that created a high risk of serious injury. Dealer CS did attach an expert report to its response which references various "hazards"

caused by the warehouse expansion and ongoing business operations, but with one possible exception, the report does not state that any of these "hazards" are abnormally dangerous or create a high risk of serious injury. The report states that the absence of a protective barrier around a detention pond "presents a significant drowning hazard to the local public." While a "significant drowning hazard" may constitute a high risk of serious injury, the report does not assert "abnormally dangerous conduct" created the risk. *See Crosstex*, 505 S.W.3d at 617 ("As we have confirmed today, . . . this strict-liability basis for a claim alleging nuisance must be based on conduct that constitutes an 'abnormally dangerous activity.'").[9] The trial court properly granted the motion with respect to Dealer CS's "nuisance" claim against Staples. *See* Tex. R. Civ. P. 166a(i); *Town of Dish v. Atmos Energy Corp.*, 519 S.W.3d 605, 608 (Tex. 2017) ("As the residents never responded to [movant's] no-evidence point, the trial court properly granted [movant's] summary-judgment motion"). Dealer CS's fourth issue is overruled with respect to Staples.

## E. Judicial admission

DCT moved for summary judgment on Dealer CS's nuisance claim, arguing that the claim was barred by DCT's affirmative defenses. DCT reiterates the application of its affirmative defenses in its responsive appellate brief and also raises several new arguments regarding Dealer CS's nuisance claim. Because DCT did not raise its new arguments in its summary-judgment motion, we do not consider them on appeal. *See* Tex. R. Civ. P. 166a(c); *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) ("Summary judgments . . . may only be

---

[9] The nuisance or resulting hazard "refers to a legal injury that may support a cause of action, but it is not itself the cause of action or the conduct that is necessary to support the cause of action." *Crosstex*, 505 S.W.3d at 600–01.

granted upon grounds expressly asserted in the summary judgment motion."); *Clear Creek*, 589 S.W.2d at 677. We are limited to those grounds expressly set forth in the motion to determine whether the summary judgment was properly granted. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 343 (Tex. 1993).

DCT argued in its summary-judgment motion, and now argues in its response, that the alleged nuisance issues existed long before the expansion, and therefore, Dealer CS's nuisance claims are barred by limitations, laches and estoppel, and res judicata. In its fifth, sixth, and seventh issues, Dealer CS addresses these defenses with respect to its claim for violation of deed restrictions. Dealer CS did not assign error to the defenses of laches and estoppel or res judicata with respect to its claim for nuisance. With respect to nuisance, Dealer CS addresses only DCT's limitations defense.

Dealer CS implicitly asserts that DCT judicially admitted it would no longer pursue its laches and estoppel and res judicata defenses to nuisance, stating, "When pressed by the trial court at the summary-judgment hearing, DCT conceded that its only argument against the nuisance claim was limitations." We do not agree that DCT made such an admission.[10]

The statement Dealer CS points to as a concession was made in the context of an exchange between the trial court and counsel for DCT and Staples. The trial court indicated that he "[didn't] see that laches or estoppel would have the same impact or the same pertinency to the nuisance claim as it [did] to the other claims."[11] DCT's trial counsel McNiel responded, "I think laches and estoppel

---

[10] *See Shepherd v. Ledford*, 962 S.W.2d 28, 33 (Tex. 1998) (equating stipulation, or concession, to judicial admission).

[11] In reviewing a summary judgment, we must base our review on the court's written

21

would apply, Your Honor" and provided reasons to support his position. The trial court went on to ask questions related to laches and estoppel in the context of the alleged nuisance. Counsel for DCT and Staples continued to respond in support of the defenses. Afterwards, the trial court stated to McNiel, "So nuisance is, for you, is simply limitations, and they didn't give you any evidence of it." McNiel responded, "Yes, sir. At this point in time we don't think it's a nuisance; but that's not for today's argument." Dealer CS contends this response was a concession that DCT's "only argument against the nuisance claim was limitations."

McNiel's "Yes, sir" response may have been an acknowledgment of the court's initial assessment of DCT's laches and estoppel defenses. It was not a clear, deliberate, and unequivocal concession of his laches and estoppel defense or his res judicata defense such that it constitutes a judicial admission. *See Regency Advantage Ltd. P'ship v. Bingo Idea-Watauga, Inc.*, 936 S.W.2d 275, 278 (Tex. 1996) (holding that statement was not clear, deliberate, and unequivocal so as to constitute judicial admission).

Because DCT did not judicially admit or concede its defenses of laches and estoppel or res judicata, and because Dealer CS failed to assign error to these affirmative defenses, each of which constitutes an independent ground for summary judgment, we must affirm summary judgment in favor of DCT on the "nuisance" claim. *See Malooly Bros.*, 461 S.W.2d at 121.

Dealer CS's fourth issue is overruled with respect to DCT.

---

order, not on oral statements the trial court made during the summary-judgment hearing. *Jampole v. Touchy*, 673 S.W.2d 569, 574 (Tex. 1984) ("It is the court's order that counts, not the stated reasons or oral qualifications."), *disapproved of on other grounds by Walker v. Packer*, 827 S.W.2d 833, 842 (Tex. 1992) (orig. proceeding).

### III.  CONCLUSION

We affirm the portion of the trial court court's judgment dismissing Dealer CS's claims against DCT, Staples, and Association Defendants. We reverse the portion of the trial court's judgment awarding attorney's fees to DCT, Staples, and Association Defendants and render judgment that DCT, Staples, and Association Defendants take nothing on their claims for attorney's fees.

/s/     Charles A. Spain
Justice

Panel consists of Justices Jewell, Zimmerer, and Spain.