**Affirmed in Part, Reversed and Remanded in Part, and Opinion Filed September 5, 2024**



In The
**Court of Appeals
Fifth District of Texas at Dallas**

_____

**No. 05-23-00574-CV**
_____

**MRT OF KEMP TX–SNF, LLC, Appellant
V.
LLOYD DOUGLAS ENTERPRISES, LC AND LLOYD DOUGLAS, INDIVIDUALLY, Appellees**

**On Appeal from the 86th Judicial District Court
Kaufman County, Texas
Trial Court Cause No. 105670-86**

## OPINION

Before Justices Partida-Kipness, Pedersen, III, and Carlyle
Opinion by Justice Partida-Kipness

This breach of contract case relates to appellant MRT of Kemp TX–SNF, LLC's (MRT) purchase of Kemp Care Center, a nursing home in Kemp, Texas. MRT appeals the award of attorney's fees to appellee Lloyd Douglas Enterprises, LC (LDE). We affirm the trial court's award of fees through trial, reverse the trial court's awards of conditional appellate fees, and remand for redetermination of those fees.

# BACKGROUND

Appellee Lloyd Douglas Enterprises, LC (LDE) was formed in 2002 for the purpose of serving as a management company to several skilled nursing facilities in Texas. In 2004, appellee Lloyd Douglas (Douglas) purchased property in Kemp, Texas (the Property) as a possible future location for a new skilled nursing facility. In May 2011, Douglas deeded the Property by special warranty deed to Kemp Investor Holdings, LLC (KIH). KIH entered into a Construction Agreement with Mt. Pleasant Land Development, LLC, n/k/a Douglas Land Development, LLC (Douglas Land Development) to construct a new skilled nursing facility on the Property. Construction of the facility, known as the Kemp Care Center, was completed in 2012.

In late 2014 or early 2015, GruenePointe Acquisition I, LLC (GruenePointe) expressed an interest in purchasing ten skilled nursing facilities, including the Kemp Care Center. On May 1, 2015, GruenePoint entered into a purchase and sale agreement (PSA 1) to purchase those facilities. Multiple entities were collectively defined as a singular "Seller" in PSA 1, including LDE and KIH. PSA 1 identified GruenePointe "or its permitted assignee" as the "Buyer." Article 5 provided "Seller" would convey title to the ten facilities to GruenePointe or to GruenePointe's assigns, which consisted of ten "to-be-formed special purpose entities":

> 5. Title to the Facilities will be conveyed from Seller to Buyer or its assigns consisting of ten (10) to-be formed special purpose entities and title will be conveyed by ten (10) separate special warranty deeds and ten (10) separate general assignments, one (1) for each of the ten (10)

–2–

senior care facilities listed in <u>Schedule 1.1.</u> in a form, agreed to by the parties prior to the end of the Due Diligence Period, as defined herein. Fee simple indefeasible title to the Real Property, and marketable title to the Personal Property, will be conveyed from Seller to Buyer or Buyer's assignee, free and clear of all liens, charges, easements and encumbrances of any kind, other than all matters reflected in the Title Commitments and Surveys. . . .

PSA 1 also included multiple representations and warranties of the "Seller." Articles 8.19, 8.20, and 8.24 related to the construction and condition of the facilities and are relevant to MRT's claims in the underlying proceeding:

> 8.19 <u>No Misstatements, Etc.</u> Neither the representations and warranties of Seller stated in this Agreement, including the Exhibits and the Schedules attached hereto, nor any certificate or instrument furnished or to be furnished to Buyer by Seller in connection with the transactions contemplated hereby, contains or will contain any untrue or misleading statement of a material fact.
>
> 8.20 <u>Construction.</u> Seller has no actual or constructive knowledge of any material variance in the construction of the Facilities from the final approved plans and specifications for the Facilities or of any patent or latent defects in the construction of the Facilities.
>
> * * *
>
> 8.24 General Matters. The representations and warranties set forth in this Section 8 are made for the benefit of Buyer and its permitted successors and assigns as of the Effective Date and will be true in all material respects as of the Effective Date and as of the Closing Date and will be subject to the provisions of this Section 8.24. Seller acknowledges that all of the representations and warranties made in this Section 8 are material and have been relied upon by Buyer in all respects in entering into this Agreement For purposes of this Agreement, the phrase "to Seller's actual knowledge," "to the best of Seller's knowledge," "to Seller's best knowledge," "to Seller's knowledge," or words of similar import will mean the actual knowledge of Lloyd Douglas, after due inquiry and investigation.

On July 29, 2015, GruenePointe entered into a separate purchase and sale agreement (PSA 2) to sell the ten skilled nursing facilities that were the subjects of PSA 1 to ten "special purpose entities,"[1] including appellant MRT of Kemp TX-SNF, LLC[2] (MRT). The same day, Douglas, as KIH Manager, executed a Bill of Sale, Assignment and Assumption (Bill of Sale) conveying all of KIH's intangible personal property related to the Kemp Care Center directly to MRT, along with improvements and contract rights related to the construction of the facility. In the Bill of Sale, KIH is defined as the Assignor and MRT is defined as the Assignee. On July 30, 2015, KIH executed a special warranty deed conveying title of the Kemp Care Center directly to MRT. The closing statement shows MRT purchased the Kemp Care Center property for more than $22 million.

MRT later discovered foundation problems, plumbing leaks, and other issues with the property. MRT also learned there were material variances in the construction of the Kemp Care Center from the final approved plans and specifications. MRT concluded those problems and variances were contrary to the representations and warranties made by LDE in PSA 1 and sued LDE for breach of

---

[1] The "Purchasers" are defined collectively in PSA 2 as the following special-purpose entities: MRT of San Antonio TX -- SNF I, LLC; MRT of San Antonio TX -- SNF II, LLC; MRT of Graham TX -- SNF, LLC; MRT of Kemp TX -- SNF, LLC; MRT of Kerens TX -- SNF, LLC; MRT of Brownwood TX -- SNF, LLC; MRT of El Paso TX -- SNF, LLC; MRT of Kaufman TX -- SNF, LLC; MRT of Longview TX -- SNF, LLC; and MRT of Mt. Pleasant TX -- SNF, LLC.

[2] MRT describes itself as a "special-purpose entity" owned by MedEquities Realty Trust, Inc. (MRTI). The trial court's findings of fact state "GruenePointe and MRTI entered into" PSA 2. MRTI, however, is not referenced in PSA 2. MRT does not challenge this finding of fact on appeal, and the finding does not impact our analysis. Therefore, we need not decide whether the trial court's finding is erroneous.

–4–

PSA 1. MRT also asserted claims of fraud, statutory fraud, fraud by nondisclosure, negligent misrepresentation, and breach of the construction contract against LDE and Douglas. Finally, MRT sought a declaratory judgment against Douglas concerning the legal and factual effect of a sworn declaration filed by Douglas in a separate lawsuit. In addition to monetary damages, MRT sought attorney's fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code, Article 28 of PSA 1, and Chapter 27 of the Texas Business and Commerce Code. Article 28 of PSA 1 provided:

> 28. Prevailing Party. Subject to the limitations as otherwise set forth in this Agreement, if an action will be brought on account of any breach of or to enforce or interpret any of the terms, covenants or conditions of this Agreement, the prevailing party will be entitled to recover from the other party, as part of the prevailing party's costs, reasonable attorney's fees, the amount of which will be fixed by the court and will be made a part of any judgment rendered.

LDE and Douglas filed a counterclaim seeking attorney's fees under Article 28 of PSA 1 should they prevail against MRT's claims.

After a bench trial, the trial court entered a take nothing judgment against MRT. The trial court awarded LDE attorney's fees incurred through trial of $623,151.69, and the following conditional appellate fees in the event of an unsuccessful appeal by MRT to this Court or the Texas Supreme Court:

- $150,000 "to respond or submit an appeal to" an intermediate court of appeals and "to prepare for and present oral argument[;]"

- $40,000 "to respond to or file a petition for review" in the Texas Supreme Court;

–5–

- $40,000 if the Texas Supreme Court "requests full briefing[;]" and

- $10,000 if the Texas Supreme Court requires oral argument.

In its findings of fact and conclusions of law, the trial court concluded in pertinent part that MRT was not a party to PSA 1 and, therefore, lacked standing to sue LDE for breach of PSA 1. The trial court also concluded LDE did not breach PSA 1, the representations and warranties included in PSA 1 lapsed nearly three years before MRT filed the lawsuit, and MRT failed to prove any alleged breach by LDE was the cause of damages to MRT. As for the award of attorney's fees, the trial court concluded LDE was entitled to attorney's fees because LDE did not breach PSA 1 and, therefore, was the prevailing party for purposes of Article 28 of PSA 1.

Here, MRT challenges the awards of attorney's fees through trial and conditional appellate fees. MRT first argues LDE is not entitled to fees because the trial court concluded MRT was not a party to the contract and, as such, LDE did not prevail against a party to the contract. MRT next argues the award of conditional appellate fees was not supported by sufficient evidence.

## STANDARD OF REVIEW

The determination of whether attorney's fees are available in a particular case is a question of law, which we review de novo. *Hizar v. Heflin*, 672 S.W.3d 774, 798 (Tex. App.—Dallas 2023, pet. denied) (citing *Cent. Forest S/C Partners, Ltd. v. Mundo–Mundo, Inc.*, 184 S.W.3d 296, 299 (Tex. App.—Dallas 2005, no pet.) (citing *Holland v. Wal–Mart Stores*, 1 S.W.3d 91, 94 (Tex. 1999) (per curiam))). "Absent a

–6–

mandatory statute, a trial court's jurisdiction to render a judgment for attorney's fees must be invoked by pleadings, and a judgment not supported by pleadings requesting an award of attorney's fees is a nullity." *Alan Reuber Chevrolet, Inc. v. Grady Chevrolet, Ltd.*, 287 S.W.3d 877, 884 (Tex. App.—Dallas 2009, no pet.).

A trial court's decision to award attorney's fees is reviewed for an abuse of discretion. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 761 (Tex. 2012); *Shamim v. Cantera Owners Ass'n, Inc.*, No. 05-21-00274-CV, 2022 WL 4480565, at *2 (Tex. App.—Dallas Sept. 27, 2022, no pet.) (mem. op.). A party seeking attorney's fees bears the burden of proof and must provide enough facts to support the reasonableness of the amount awarded. *Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 354 (Tex. 2020). To recover fees for contingent appellate services, a party must "provide opinion testimony about the services it reasonably believes will be necessary to defend the appeal and a reasonable hourly rate for those services." *Jones v. Guildford LLC*, No. 05-22-01252-CV, 2023 WL 8540007, at *7 (Tex. App.—Dallas Dec. 11, 2023, no pet.) (mem. op.) (quoting *Yowell*, 620 S.W.3d at 355).

## ANALYSIS

In two issues, MRT challenges the attorney's fees awarded to LDE through trial and the award of conditional appellate fees. We will address each issue in turn.

## I. Award of Fees to LDE Under PSA 1

In its first issue, MRT argues the fees awarded to LDE through trial should be reversed because Article 28 of PSA 1 only permits recovery of fees against a party to PSA 1 or its assign, and the trial court concluded MRT was not a party to PSA 1 or an assignee. We review this question of law de novo. *See Hizar*, 672 S.W.3d at 798.

MRT asserted multiple claims against LDE in the underlying proceeding, including a breach of contract claim alleging LDE breached PSA 1. In addition to monetary damages, MRT sought attorney's fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code, Chapter 27 of the Texas Business and Commerce Code, and Article 28 of PSA 1, which provided:

> 28.     Prevailing Party. Subject to the limitations as otherwise set forth in this Agreement, if an action will be brought on account of any breach of or to enforce or interpret any of the terms, covenants or conditions of this Agreement, the prevailing party will be entitled to recover from the other party, as part of the prevailing party's costs, reasonable attorney's fees, the amount of which will be fixed by the court and will be made a part of any judgment rendered.

LDE also sought attorney's fees pursuant to Article 28 of PSA 1, arguing it would be entitled to fees as a prevailing party if LDE prevailed on MRT's breach of contract claim. The trial court rendered a take nothing judgment against MRT and in favor of LDE on MRT's breach of contract claim, concluded LDE was a prevailing party under Article 28 of PSA 1, and awarded LDE attorney's fees and conditional appellate fees pursuant to that provision.

MRT does not dispute LDE was the prevailing party or that this case was an action "brought on account of any breach of or to enforce or interpret any of the terms, covenants or conditions of" PSA 1. Instead, MRT maintains LDE "cannot enforce the attorney's fees provision because MRT is not an assignee." More specifically, MRT argues LDE was not entitled to attorney's fees under PSA 1 because "the attorney's fees provision in PSA 1 can be enforced against only a party heir, successor, or assign of the contract, and—as LDE argued and the Trial Court found—MRT was none of those things." In support of this argument, MRT relies on an opinion from the Fourteenth District Court of Appeals at Houston. *See Dealer Comput. Servs., Inc. v. DCR Hollister RD, LLC*, 574 S.W.3d 610 (Tex. App.— Houston [14th Dist.] 2019, no pet.).

*Dealer Computer Services* involved a dispute between business owners concerning certain deed restrictions. 574 S.W.3d at 613. Dealer CS owned an office building in the community known as Northwest Crossing. *Id.* at 614. In 2014, DCT Hollister Rd, LLC (DCT) acquired the property and warehouse across the street from Dealer CS's office building. *Id.* DCT's tenant, Staples, Inc. (Staples), used the warehouse as a "fulfillment center." *Id.* Northwest Crossing contained four sections built in three different stages. *Id.* Sections 1 and 2 were established in 1975 under section 1 and 2 deed restrictions. *Id.* Section 3 was established in 1980 with its own set of restrictions. *Id.* Section 4 was established in 1981 with yet another set of restrictions. *Id.* Although DCT's warehouse was across the street from Dealer CS's

office building, the warehouse and the office building were in different sections of Northwest Crossing. *Id.* DCT's warehouse was in Section 3 while Dealer CS's office building was in Section 4. *Id.* Section 3 was governed by Section 3 restrictions, and Section 4 was governed by Section 4 restrictions. *Id.*

In 2015, DCT and Staples expanded the warehouse. *Id.* Dealer CS sued DCT and Staples for allegedly violating Section 3 deed restrictions and creating a nuisance when they expanded the warehouse. *Dealer Comput. Servs.*, 574 S.W.3d at 614. On summary judgment, DCT and Staples argued Dealer CS lacked standing to assert claims based on violations of Section 3 deed restrictions because Dealer CS did not own property in Section 3 and was not a party to Section 3 deed restrictions. *Id.* at 616. The trial court agreed and granted summary judgment for DCT and Staples. *Id.* at 614. The trial court also awarded DCT and Staples attorney's fees pursuant to provisions of the Section 3 deed restrictions. *Id.* at 620. The appellate court affirmed the trial court's conclusion that Dealer CS lacked standing to enforce Section 3 deed restrictions. *Id.* The court reversed the award of attorney's fees, however, because Dealer CS was not a party to the Section 3 deed restrictions:

> Because the section 3 restrictions were created to benefit and burden only section 3 property owners, section 3 restrictions concerning attorney's fees do not obligate Dealer CS to pay attorney's fees to DCT, Staples, or Association Defendants.

*Id.* (citing *Arlington Home, Inc. v. Peak Env't Consultants, Inc.*, 361 S.W.3d 773, 783 (Tex. App.—Houston [14 Dist.] 2012, pet. denied) ("There is no evidence that the buyer and seller intended also to obligate themselves unilaterally to pay

–10–

attorney's fees to persons who, because they were not parties to the contract, would not themselves be obligated under the provision.")). MRT contends the court's analysis in *Dealer Computer* applies here. We disagree.

As a preliminary matter, the *Dealer Computer Services* opinion does not include the language of the attorney's fees provision at issue. We, therefore, cannot conclude as a matter of law that the court's conclusions in *Dealer Computer Services* would apply equally here. Moreover, the *Dealer Computer Services* court did not address whether Dealer CS bound itself to the Section 3 deed restrictions and attorney's fees provision by suing on those restrictions.[3] Under the doctrine of direct-benefits estoppel, "a litigant who sues based on a contract subjects him or herself to the contract's terms." *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 755 (Tex. 2001) (by suing on the installment contract, the plaintiffs subjected themselves to the contract's terms, including the arbitration provision). LDE maintains direct-benefits estoppel bars MRT from seeking to overturn the fees awarded to LDE. We agree.

Under direct-benefits estoppel, "a non-signatory who is seeking the benefits of a contract or seeking to enforce it 'is estopped from simultaneously attempting to avoid the contract's burdens.'" *Rachal v. Reitz*, 403 S.W.3d 840, 846 (Tex. 2013) (citing *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005)). "[A] litigant who sues based on a contract subjects him or herself to the contract's terms."

---

[3] The question of direct-benefits estoppel was also not addressed in the case cited by the *Dealer Computer Services*. *See Arlington Home, Inc. v. Peak Env't Consultants, Inc.*, 361 S.W.3d 773, 783 (Tex. App.—Houston [14 Dist.] 2012, pet. denied).

*In re Weekley Homes, L.P.*, 180 S.W.3d 127, 131 (Tex. 2005) (quoting *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 755). To sue "based on a contract" means to "seek, through the claim, to derive a direct benefit from the contract." *Loya v. Loya*, 507 S.W.3d 871, 877 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (quoting *In re Weekley Homes*, 180 S.W.3d at 131). Whether a claim seeks a direct benefit from the contract "turns on the substance of the claim, not artful pleading." *In re Weekley Homes*, 180 S.W.3d at 131–32. For example, "nonparties generally must arbitrate claims if liability arises from a contract with an arbitration clause, but not if liability arises from general obligations imposed by law." *In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759, 761 (Tex. 2006). A nonparty may also be subject to the terms of a contract, outside of litigation, if it "deliberately seeks and obtains substantial benefits from the contract itself." *In re Weekley Homes*, 180 S.W.3d at 132. This analysis focuses on the nonparty's conduct during the performance of the contract. *Id.* at 132–33.

Many of the cases applying direct-benefits estoppel to non-parties or non-signatories do so in the context of enforcing an arbitration provision against the non-party or non-signatory. *E.g.*, *Rachal*, 403 S.W.3d at 851; *In re Weekley Homes*, 180 S.W.3d at 135; *In re First Merit Bank*, 52 S.W.3d at 755. However, this doctrine applies equally to enforcement of an award of attorney's fees against a non-party or non-signatory who subjects itself to the contract's terms by suing to enforce the contract. *Motis Energy, L.L.C. v. SWN Prod. Co., L.L.C.*, 802 F. App'x 848, 849–50

–12–

(5th Cir. 2020) (applying *In re Weekley Homes* and *In re First Merit Bank* and holding direct-benefits estoppel prevented the plaintiff "from prevailing on its theory that, as a nonparty, it is not subject to the Agreement's attorneys' fees provision" where the plaintiff "subjected itself to the attorneys' fees provision of the Agreement when it sued SWN to enforce the Agreement."); *Lawson v. Keene*, No. 03-13-00498-CV, 2016 WL 767772, at *6 (Tex. App.—Austin Feb. 23, 2016, pet. denied) (mem. op.) (plaintiff who did not sign contract for sale of home but chose to join her husband's lawsuit, which was related to that contract, was equitably estopped from arguing the contract's prevailing party fees provision[4] could not be enforced against her); *Sierra Assoc. Grp., Inc. v. Hardeman*, No. 03-08-00324-CV, 2009 WL 416465, at *10 (Tex. App.—Austin Feb. 20, 2009, no pet.) (mem. op.) (fees properly awarded to non-parties to TREC-promulgated contract, which included prevailing party fees provision[5]).

Here, MRT is not a party to PSA 1. But MRT embraced PSA 1 by seeking to enforce its terms. By doing so, MRT subjected itself to the entirety of the terms of PSA 1, including the attorney's fees provision in Article 28. *See, e.g.*, *Motis Energy*,

---

[4] The provision was paragraph 17 of the standard Texas Real Estate Commission (TREC) contract and provided: "A Buyer, Seller, Listing Broker, Other Broker, or escrow agent who prevails in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceedings." *Lawson*, 2016 WL 767772, at *3.

[5] Like in *Lawson*, the provision at issue in *Sierra Associate Group* was paragraph 17 of the standard TREC contract. However, the language of paragraph 17 in *Sierra Associate Group* was different from the provision in *Lawson* and provided: "The prevailing party in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding incurred by the prevailing party." *Sierra Assoc. Grp.*, 2009 WL 416465, at *8–9.

–13–

802 F. App'x at 849–50 ("Motis subjected itself to the attorneys' fees provision of the Agreement when it sued SWN to enforce the Agreement."); *see also Shakeri v. ADT Sec. Servs., Inc.*, 816 F.3d 283, 291 (5th Cir. 2016) (per curiam) (because the plaintiffs asserted breach of contract claims under a contract they were not a party to, the plaintiffs were bound by the contract's terms); *In re FirstMerit Bank*, 52 S.W.3d at 755–56 (by joining their parents' contract claim, the children "subjected themselves to the contract's terms" even though they never signed the agreement). Thus, the doctrine of direct-benefits estoppel prevents MRT from prevailing on its theory that, as a nonparty, it is not subject to the attorneys' fees provision in PSA 1.

To avoid application of this well-settled law against it, MRT argues Article 21 of PSA 1 prohibited the award of attorney's fees to LDE here "because the contract can only be enforced against parties, heirs, successors, and assigns of the contract." Article 21 is titled "Assignment: Successors" and states:

> 21. Neither party will assign this Agreement without the prior written consent of the other, provided, however, Buyer may assign all of its rights, title, liability, interest and obligation pursuant to this Agreement to one or more entities owned (including a joint venture), controlled by or under common control with Buyer without obtaining Seller's consent and Buyer may assign all of its rights, title, liability, interest and obligation pursuant to this Agreement to MedEquities Realty Trust, Inc., a Maryland corporation without obtaining Seller's consent. Upon any such assignment, any deposits made by Buyer will become the deposits of the assignee. Subject to the limitations on assignment set forth above, all the terms of this Agreement will be binding upon and inure to the benefit of and be enforceable by and against the heirs, successors and assigns of the parties hereto.

MRT's interpretation of Paragraph 21 is incorrect. The plain language of Paragraph 21 does not state that the terms of PSA 1 cannot be enforced against non-parties or non-signatories. Rather, Paragraph 21 confirms only that the heirs, successors, and assigns of the parties to the PSA 1 retain the right to enforce the terms of PSA 1 and have those terms enforced against them. This language does not limit the recovery of attorney's fees and costs in the manner urged by MRT. We conclude Paragraph 21 does not alter our analysis and does not prevent enforcement of the fees provision against MRT.

We also conclude the plain language of Article 28 supports the award of fees here. Article 28 of PSA 1 does not limit its terms to entities named in PSA 1. Rather, it speaks in terms of "the prevailing party" and "the other party" and provides "the prevailing party" will be entitled to recover reasonable attorney's fees from "the other party" "if an action will be brought on account of any breach of or to enforce or interpret any of the terms, covenants or conditions of this Agreement, . . ." PSA 1 does not define the terms "prevailing party" or "other party," nor does it identify any specific entity or entities as a party or parties. PSA 1 identifies the signatories to it as "Seller" and "Buyer." Moreover, PSA 1 includes no language stating PSA 1 or Article 28 inure only to the benefit of or are only enforceable by or against the entities defined as "Seller" and "Buyer." PSA 1 is, thus, distinguishable from cases rejecting the award of fees to a non-party who was not included in the definition of "party" under the contract. *E.g.*, *NFVT Motors, LLC v. Jupiter Chevrolet, L.P.*, No.

05-21-01031-CV, 2022 WL 16959260, at *2 (Tex. App.—Dallas Nov. 16, 2022, no pet.) (mem. op.) (concluding "the term 'party' in the phrase 'prevailing party' must be read consistently with the use of the term 'party' in the remainder of the contract to refer only to Crest Nissan or Chase"); *Arlington Home*, 361 S.W.3d at 783 (term "party" in prevailing-party fees provision was limited to the buyer and the seller because contract defined "party" as the buyer and the seller); *Williamson v. Guynes*, No. 10-03-00047-CV, 2005 WL 675512, at *1 (Tex. App.—Waco Mar. 23, 2005, no pet.) (mem. op.) (same).

The language of Article 28 is clear; it provides "the prevailing party" is entitled to recover reasonable attorney's fees and costs from "the other party" in an action "brought on account of any breach of or to enforce or interpret any of the terms, covenants or condition of" PSA 1. No language in PSA 1 limits the recovery of attorney's fees and costs in the manner urged by MRT. *See, e.g., Sierra Assoc. Grp.*, 2009 WL 416465, at *10 (rejecting argument that contract's definition of "parties" did not include the defendants and, therefore, those defendants could not be parties within the meaning of the contract's prevailing party fees provision).

Here, MRT brought a claim against LDE for breach of PSA 1, and LDE was the prevailing party as to that claim. By asserting the contract claim against LDE under PSA 1, MRT made itself "the other party" in an action "brought on account of any breach of" PSA 1. *See Range v. Calvary Christian Fellowship*, 530 S.W.3d 818, 841 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) ("By intervening in

–16–

this case and asserting contract claims against Calvary under the lease, Sam made himself a 'party in [a] legal proceeding brought under or related to the transaction described' in the lease."); *see also Motis Energy*, 802 F. App'x at 850 ("Motis subjected itself to the attorneys' fees provision of the Agreement when it sued SWN to enforce the Agreement."). "A nonparty cannot both have his contract and defeat it too." *In re Weekley Homes*, 180 S.W.3d at 135. We overrule MRT's first issue.

## II.    Conditional Appellate Fees

MRT next contends LDE presented legally insufficient evidence to support the award of conditional appellate fees[6] because LDE presented no opinion testimony about "reasonable hourly rates for necessary appellate services" as required by *Yowell*. We agree.

When reviewing a trial court's award of attorney's fees, we must ensure the record contains sufficient evidence to support such an award. *Hizar*, 672 S.W.3d at 803 (citing *Yowell*, 620 S.W.3d at 354). The party seeking attorney's fees bears the burden of proof and must supply enough facts to support the reasonableness of the amount awarded. *Id.* If there is insufficient evidence in the record to uphold the trial

---

[6] In its brief, LDE states "MRT does not challenge the award of conditional appellate fees that the trial court awarded LDE in the event MRT appeals to the Texas Supreme Court." LDE cites the trial court's judgment in support. Reviewing MRT's briefing, we conclude MRT has challenged the entirety of the award of conditional appellate fees. Although MRT references the $150,000 awarded for appeal to this Court, MRT does not state its challenge is limited to that award. For example, MRT notes the $150,000 award was "especially" large, but the other amounts awarded for appellate work were also large. Further, MRT's prayer requests we "reverse the award of contingent appellate fees" if we overrule its first appellate issue. We conclude MRT challenges all conditional appellate fees awarded in the trial court's judgment and consider the entire award in our legal sufficiency review.

court's award of those fees, we must reverse. *Id.* When we review the sufficiency of the evidence to support an award of attorney's fees for work performed through trial, we do so within the context of the well-established "lodestar method," which is a "short hand version" of the *Arthur Andersen* factors, to determine reasonable and necessary attorney's fees. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 496 (Tex. 2019); *see Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). Under the lodestar method, the factfinder must first determine the reasonable hours spent by counsel and the reasonable hourly rate for counsel's work. *El Apple I*, 370 S.W.3d at 760. The factfinder then multiplies the number of hours counsel worked on the case by the applicable rate to determine the base fee or lodestar. *Id.* The base fee is presumed to reflect the reasonable and necessary attorney's fees. *Rohrmoos Venture*, 578 S.W.3d at 499. The factfinder may adjust the lodestar up or down if relevant factors indicate an adjustment is necessary to reach a reasonable fee in the case. *Id.* at 500–01.

Conditional appellate fees, however, are not subject to a lodestar analysis because they are not yet incurred, and an appeal is still hypothetical when such fees are awarded. *Yowell*, 620 S.W.3d at 354–55; *Hizar*, 672 S.W.3d at 803 (citing *Yowell*, 620 S.W.3d at 355). There is no certainty regarding who will represent the appellee on appeal, what counsel's rate will be, or what services will be necessary to ensure appropriate representation in light of the issues the appellant chooses to raise. *Id.* This uncertainty, however, does not excuse a party seeking to recover

conditional appellate fees from the need to provide opinion testimony about the services it reasonably believes will be necessary to defend the appeal and a reasonable hourly rate for those services. *Id.*

LDE submitted the affidavit of its counsel, Hugh Connor, to support the award of conditional appellate fees. Paragraph 13 of Connor's affidavit was the only evidence presented to support an award of conditional appellate fees:

> 13. "I am also familiar with the reasonable and necessary fees for appellate work. I have considered the factors set forth in Rule 1.04 and the amount of time and effort it would take to prevail on an appeal in this case, if one is taken by the Plaintiff. In my opinion, if Plaintiff was to appeal, reasonable and necessary attorneys' fees and costs in responding to that appeal are as follows: (1) $200,000.00 to respond to an appeal to the Court of Appeals of Texas and to prepare for and present oral argument; (2) $50,000 to respond to or file a petition for review with the Texas Supreme Court; (3) $50,000 to provide full briefing; and, (4) $15,000 to prepare for and present oral argument to that Court.["]

This testimony does not identify the services Connor reasonably believes will be necessary to defend the appeal. Nor does he identify a reasonable hourly rate for performance of any of those services. We conclude, therefore, that LDE's evidence of conditional appellate attorney's fees is legally insufficient. *See Hizar*, 672 S.W.3d at 803–04 (similar affidavit testimony legally insufficient to meet requirements of *Yowell*).[7] Despite this Court's clear precedent, LDE maintains Connor's affidavit was sufficient to support the award of conditional appellate fees. We disagree.

---

[7] Our holding is consistent with this Court's and the majority of our sister courts' post-*Yowell* jurisprudence. *E.g.*, *Canadian Real Est. Holdings, LP v. Karen F. Newton Revocable Tr.*, No. 05-20-00747-

CV, 2022 WL 4545572, at *6 (Tex. App.—Dallas Sept. 29, 2022), *decision clarified on denial of reh'g*, No. 05-20-00747-CV, 2023 WL 2909179 (Tex. App.—Dallas Apr. 12, 2023, no pet.) (mem. op.) (same as *Hizar*); *In re D.A.C.-R.*, No. 05-21-00033-CV, 2022 WL 2302172, at *10 (Tex. App.—Dallas June 27, 2022), *judgment set aside, opinion not vacated*, No. 05-21-00033-CV, 2022 WL 2737752 (Tex. App.—Dallas July 14, 2022, pet. denied) (mem. op.) (attorney's affidavit setting out specified estimated amounts for handling each phase of an appeal was legally insufficient to support award of conditional appellate fees); *Apple Tex. Rests., Inc. v. Shops Dunhill Ratel, LLC*, No. 05-20-01052-CV, 2022 WL 883907, at *6 (Tex. App.—Dallas Mar. 25, 2022, pet. denied) (mem. op.) (similar affidavit testimony legally insufficient to meet requirements of *Yowell*); *KBIDC Invs., LLC v. Zuru Toys Inc.*, No. 05-19-00159-CV, 2020 WL 5988014, at *24 (Tex. App.—Dallas Oct. 9, 2020, pet. denied) (mem. op. on reh'g) (counsel's testimony legally insufficient to support conditional appellate fees where he did not provide reasonable hourly rate for appellate services and stated only that client will incur certain lump sum amounts of attorney's fees during each appellate stage); *Walsh v. Gonzalez*, No. 01-21-00729-CV, 2023 WL 4110851, at *11, 12 (Tex. App.—Houston [1st Dist.] June 22, 2023, no pet.) (mem. op.) (similar affidavit testimony legally insufficient to meet requirements of *Yowell*); *Maciejack v. City of Oak Point*, No. 02-23-00248-CV, 2024 WL 3195851, at *13 (Tex. App.—Fort Worth June 27, 2024, no pet. h) (mem. op.) (attorney's testimony, which was similar to Connor's affidavit testimony, legally insufficient because it "did not provide any testimony about the particular services that would be needed to defend an appeal nor did it provide a reasonable hourly rate for those services."); *Largent v. Cassius Classic Cars & Exotics, LLC*, No. 02-22-00043-CV, 2023 WL 2179465, at *8 (Tex. App.—Fort Worth Feb. 23, 2023, no pet.) (mem. op.) (opinion that reasonable fees would equal $20,000 for an appeal to a court of appeals and $25,000 for an appeal to the Texas Supreme Court was legally insufficient); *Wells Fargo Bank, N.A. v. Rodriguez*, No. 02-21-00155-CV, 2022 WL 803839, at *4–5 (Tex. App.—Fort Worth Mar. 17, 2022, no pet.) (mem. op.) (hourly rate regarding trial fees and affidavit testimony of lump sum fees for two stages of appeal legally insufficient); *McRae v. Parkside at Round Rock*, No. 03-22-00483-CV, 2024 WL 2061585, at *3 (Tex. App.—Austin May 9, 2024, no pet.) (mem. op.) (legally insufficient evidence where the party's attorney "did not opine on a reasonable hourly rate for appellate work or outline the anticipated tasks reasonably necessary to defend an appeal before this Court or for any proceedings before the supreme court"); *Uptown Cars, Inc. v. Newcastle Mgmt. Tr.*, No. 03-22-00422-CV, 2024 WL 1221005, at *10 (Tex. App.—Austin Mar. 22, 2024, no pet.) (mem. op.) (same as *McRae*); *In re L.A.M.*, No. 07-21-00124-CV, 2022 WL 1657885, at *9 (Tex. App.—Amarillo May 24, 2022, no pet.) (mem. op.) (counsel's testimony of anticipated lump sum fee amount at each stage of appeal legally insufficient); *Jinsun, LLC v. Mireskandari*, No. 14-23-00165-CV, 2024 WL 924712, at *5 (Tex. App.—Houston [14th Dist.] Mar. 5, 2024, no pet.) (similar affidavit testimony held legally insufficient and court noted failure to "describe any relevant appellate experience by counsel that could form a basis for an assertion that the estimated amounts are reasonable for an appeal of this type of case"); *Milliken v. Turoff*, No. 14-19-00761-CV, 2021 WL 2156224, at *3 (Tex. App.—Houston [14th Dist.] May 27, 2021, no pet.) (mem. op.) (testimony of lump sum fees for each appellate stage insufficient even though hourly rate for trial was provided in testimony for trial fees); *but see Salinas Constr. Techs., Ltd. v. City of Corpus Christi*, No. 13-22-00416-CV, 2024 WL 1781923, at *14 (Tex. App.—Corpus Christi–Edinburg Apr. 25, 2024, pet. filed) (mem. op.) (attorney's broad but uncontroverted testimony of what reasonable fees would be for the services "in the event there is an appeal" to the appellate court and the supreme court was sufficient to support award of conditional appellate fees) (citing *State & Cnty. Mut. Fire Ins. Co. v. Walker*, 228 S.W.3d 404, 408–10 (Tex. App.—Fort Worth 2007, no pet.) (holding there was sufficient evidence to support the award of appellate attorney's fees when the attorney testified, without contradiction from opposing counsel, what he believed "a reasonable attorney's fee would be for the services that would 'necessarily need to be rendered' in the event of an appeal.")).

### A. Services necessary to defend against MRT's appeal

First, LDE argues Connor's affidavit provided sufficient evidence of the services necessary to defend against MRT's appeal. LDE relies on an unpublished opinion from the First District Court of Appeals in Houston to support this argument. *QJD Peking Duck Rest., Inc. v. TCP Spectrum Partners, Ltd.*, No. 01-22-00545-CV, 2023 WL 5436907 (Tex. App.—Houston [1st Dist.] Aug. 24, 2023, no pet.) (mem. op.). In *QJD Peking Duck Restaurant*, Spectrum Partners' counsel, Stacey Kremling, testified about attorney's fees. *Id.* at *1. In support of trial attorney's fees, Kremling testified about her education and experience, her hourly rate and that of two colleagues, and the number of hours they worked on the case. *Id.* Regarding appellate attorney's fees, Kremling testified as follows:

> I am familiar with the process of an appeal, handling a case on appeal to the court of appeals. I am familiar with the standard rates of attorneys in the Houston, Harris County, Texas area for handling a case of this type and size that's been appealed to the court of appeals. And my opinion as to the reasonable and necessary attorney's fees in researching, preparing, and drafting a brief and presenting this case on appeal to the court of appeals would be $30,000.

> I'm also familiar with the process of handling a case that has been appealed to the Texas Supreme Court. I'm familiar with the standard rates of attorneys in [the] Houston, Harris County area for handling a case of this type and size that has been appealed to the Texas Supreme Court. It's my opinion that the reasonable and necessary attorney's fees for researching, preparing, and drafting a brief in the event a petition for review is filed with the Supreme Court is an additional $20,000 in attorney's fees.

> And it's my opinion that reasonable and necessary attorney's fees in presenting this case to the Supreme Court, in the event a petition for review is granted by the Supreme Court, is an additional $30,000 in

attorney's fees. And it's also my opinion that in the event oral arguments are presented to the Supreme Court, it's my opinion that the reasonable and necessary attorney's fees in representing [sic] oral arguments to the Supreme Court would total an additional $20,000 in attorney's fees.

And all of these amounts are reasonable and necessary and customary in the industry for trial and appeal and appeal to the Supreme Court in a case of this type and size in [the] Houston, Harris County area.

*Id.* at *2. The trial court awarded Spectrum Partners $100,000 in conditional appellate fees, and the appellate court affirmed the award. *Id.* at *2, 4. The appellate court concluded Kremling's testimony was legally sufficient to support the award and met the requirements of *Yowell* because she testified to her hourly billing rate and the rates of two colleagues, stated her familiarity with standard rates for appellate work in the Houston and Harris County geographical area, and addressed the specific services necessary to defend the appeal. *Id.* at *4. The court found Kremling sufficiently addressed the specific services necessary to defend an appeal by testifying the reasonable and necessary fees were for "researching, preparing, and drafting a brief and presenting this case" in the court of appeals, "researching, preparing, and drafting a brief" in the Texas Supreme Court, and presenting oral argument to the Texas Supreme Court. *Id.*

Connor's affidavit does not include the specificity concerning services found in Kremling's testimony. Unlike Kremling, Connor does not state he is familiar with the process of an appeal or with handling a case on appeal to the court of appeals or the Texas Supreme Court. Moreover, Connor's affidavit does not include references

–22–

to specific services necessary to defend an appeal. Instead, he states only that the estimated lump sum fees were reasonable and necessary "to respond to an appeal" and "to prepare for and present oral argument" to an intermediate appellate court, "to respond to or file a petition for review" in the Texas Supreme Court, and to "provide full briefing" and "prepare for and present oral argument" in that court. That testimony is legally insufficient to show the services necessary to defend an appeal as required by *Yowell*. *See Hizar*, 672 S.W.3d at 803–04[8]; *see also Faith P. & Charles L. Bybee Found. v. Knutzen*, 681 S.W.3d 818, 840–41 (Tex. App.—Austin 2023, no pet.) (affidavit testimony legally insufficient because it provided no evidence of the tasks necessary to defend an appeal); *Jones-Hospod v. Hospod*, 676 S.W.3d 709, 725–26 (Tex. App.—El Paso 2023, no pet.) (attorney's testimony to appellate rates and her suspicion that an appeal "would be in excess of $20,000" was

---

[8] In this Court, testimony like that provided by Connor fails as a matter of law to provide the specificity regarding necessary appellate services required by *Yowell*. *Hizar*, 672 S.W.3d at 803–04; *Pioneer Emerald Pointe, LLC v. Texmenian Contractors, LLC*, No. 05-22-00493-CV, 2023 WL 3963991, at *11–12 (Tex. App.—Dallas June 13, 2023, no pet.) (mem. op.) (counsel's testimony his client would incur reasonable and necessary attorney's fees of $20,000 on appeal and $10,000 in the Texas Supreme Court constituted no evidence of the services necessary to defend an appeal); *Apple Tex. Rests.*, 2022 WL 883907, at *6 (same); *Ruff v. Ruff*, No. 05-21-00157-CV, 2022 WL 420353, at *11 (Tex. App.—Dallas Feb. 11, 2022, pet. denied) (mem. op.) (testimony legally insufficient to support conditional appellate fees where counsel's declaration provided opinion of hourly rate for appellate services and lump sum amount of fees and expenses for each appellate stage but included no description of necessary services on appeal); *KBIDC Invs.*, 2020 WL 5988014, at *24 (counsel's testimony legally insufficient to support conditional appellate fees where he did not provide reasonable hourly rate for appellate services and stated only that client will incur certain lump sum amounts of attorney's fees during each appellate stage).

legally insufficient).[9] *QJD Peking Duck Restaurant* takes a minority position contrary to our well-established precedent. We decline to adopt that position here.

## B. Reasonable hourly rate

LDE also contends Connor's reference to the hourly rates charged by LDE's twenty-three attorneys and paralegals was sufficient to meet *Yowell's* hourly rate requirement. LDE again relies on *QJD Peking Duck Restaurant* to support this argument. There the court concluded Fleming's testimony concerning the attorneys' current hourly rates (i.e., trial rates) was sufficient proof of a reasonable hourly rate for necessary services performed on appeal. *QJD Peking Duck Rest.*, 2023 WL 5436907 at *4. LDE's reliance on that case is again misplaced.

---

[9] The majority of our sister courts have reached the same result in factually similar cases. *E.g.*, *Maciejack*, 2024 WL 3195851, at *13; *Bank of the W. v. PSMD Med. Assocs., P.A.*, No. 02-23-00376-CV, 2024 WL 1924603, at *5 (Tex. App.—Fort Worth May 2, 2024, no pet.) (mem. op.) (affidavit stating reasonable and necessary fees for each appeal would be $12,500 was legally insufficient); *Largent*, 2023 WL 2179465, at *8; *Rice v. Rice*, No. 02-21-00413-CV, 2023 WL 109817, at *30 (Tex. App.—Fort Worth Jan. 5, 2023, no pet.) (mem. op.) (bare opinion of lump sum fees likely to be incurred on appeal insufficient because it "lacks the proper detail of the services to be rendered"); *Rodriguez*, 2022 WL 803839, at *4–5 (testimony of hourly rate provided for trial fees and affidavit testimony stating additional fees of $5,000 would be reasonable and necessary "in the event of an appeal" to the court of appeals and to the Texas Supreme Court was legally insufficient); *Gordon v. Gordon*, No. 03-22-00454-CV, 2024 WL 2429995, at *12 (Tex. App.—Austin May 24, 2024, no pet. h.) (mem. op.) (attorney's testimony "as to two lump sums (one for an appeal to this Court and one for an appeal to the supreme court) based on his experience and in his opinion" was legally insufficient); *McRae*, 2024 WL 2061585, at *3 (legally insufficient evidence where the party's attorney "did not opine on a reasonable hourly rate for appellate work or outline the anticipated tasks reasonably necessary to defend an appeal before this Court or for any proceedings before the supreme court."); *Jimmie Luecke Child. P'ship v. Droemer*, No. 03-20-00096-CV, 2022 WL 243162 at *8 (Tex. App.—Austin Jan. 27, 2022, pet. denied) (mem. op.) (holding set hourly rate and an estimate for the total cost of the appeal was legally insufficient and collecting cases); *In re L.A.M.*, 2022 WL 1657885, at *9 (counsel's testimony of anticipated lump sum fee amount at each stage of appeal was legally insufficient); *Aguilar v. Wells Fargo Bank, N.A.*, No. 07-20-00036-CV, 2021 WL 317641, at *5–6 (Tex. App.—Amarillo Jan. 29, 2021, no pet.) (mem. op.) ("While the attorney's affidavit provides evidence of his and his colleagues' reasonable hourly rates, it does not include any other facts to support the reasonableness of the contingent appellate fees. For example, it lacks an estimate of the hours required in the event of an appeal or any description of the work that responding to such an appeal would entail.").

As a preliminary matter, the court's holding in *QJD Peking Duck Restaurant* conflicts with our Court's precedent. *E.g.*, *Hizar*, 672 S.W.3d at 803–04 (hourly rates presented in support of trial fees legally insufficient to support conditional appellate fees); *see also Canadian Real Est. Holdings*, 2022 WL 4545572, at *6 (same); *Apple Tex. Rests.*, 2022 WL 883907, at *6 (same); *KBIDC Invs.*, 2020 WL 5988014, at *24 (counsel's testimony legally insufficient to support conditional appellate fees where he did not provide reasonable hourly rate for appellate services and stated only that client will incur certain lump sum amounts of attorney's fees during each appellate stage).[10] Under *Hizar*, Connor's reliance on the hourly rates provided for services in the trial court are legally insufficient to support an award of conditional appellate fees. *Hizar*, 672 S.W.3d at 803–04.

Moreover, *QJD Peking Duck Restaurant* is factually distinguishable from this case. Spectrum Partners presented the hourly rates of only three attorneys in *QJD Peking Duck Restaurant*, and those rates were not disparate from one another.

---

[10] As in our Court, the majority of our sister courts that have addressed this issue also conclude testimony concerning an attorney's hourly rate for trial is legally insufficient to support an award of conditional appellate fees. *E.g.*, *Rodriguez*, 2022 WL 803839, at *4–5; *Fiamma Statler, LP v. Challis*, No. 02-18-00374-CV, 2020 WL 6334470, at *19 (Tex. App.—Fort Worth Oct. 29, 2020, pet. denied) (mem. op.); *McRae*, 2024 WL 2061585, at *3 (evidence insufficient to support conditional appellate fees where hourly rate for trial in evidence but no evidence of reasonable hourly rate for appellate work); *Droemer*, 2022 WL 243162, at *8 (testimony concerning hourly rate for trial was not evidence of reasonable hourly rate for necessary appellate services); *In re L.A.M.*, 2022 WL 1657885, at *9 (same); *Jinsun*, 2024 WL 924712, at *5 (same); *Arevalo v. Llamas*, No. 13-20-00497-CV, 2022 WL 3264628, at *10 (Tex. App.—Corpus Christi–Edinburg Aug. 11, 2022, no pet.) (mem. op.) (same); *but see Salinas Constr. Techs.*, 2024 WL 1781923, at *14 (holding testimony concerning hourly rate for trial services sufficient to support award of appellate attorney's fees). The opinion in *QJD Peking Duck Restaurant* is also contrary to that court's prior opinion in *Walsh v. Gonzalez*, in which the court concluded the attorney's testimony concerning her reasonable hourly rate for trial services was not evidence of a reasonable hourly rate for services necessary to defend an appeal. 2023 WL 4110851, at *12.

Fleming testified her billable rate was $250 per hour, her supervising law partner charged $350 per hour, and a junior associate charged $200 per hour. LDE, in contrast, presented evidence of billing rates charged by twenty-three attorneys and paralegals ranging from $150 per hour to $640.06 per hour. Further, those rates varied greatly between each biller and between the four law firms for which they worked. For example, the six professionals who billed time from Kelly Hart & Hallman each charged a different hourly rate ranging from $210.11 to $640.06. Similarly, the four attorneys from Jackson Walker each had a different hourly rate ranging from $295 to $495. Although the rates charged by the thirteen remaining billers at the other two law firms were less disparate and included some common rates, those hourly rates still ranged from $145.28 to $375. Connor's affidavit provided no reasonable basis for the trial court to determine a reasonable hourly rate for appeal or to conclude the lump sums requested by LDE were reasonable fees for services necessary to defend an appeal.

The failure to provide an estimated hourly rate for appellate work is especially problematic in cases like this one where multiple attorneys have billed time in the underlying proceeding. It is not impossible however, to present evidence of a reasonable hourly rate that would comply with *Yowell* and *Hizar*. For example, a party could provide evidence of a blended hourly rate the fees expert believes to be a reasonably hourly rate for necessary appellate work. *E.g.*, *Bennett v. Zucker*, No. 05-19-01445-CV, 2021 WL 3701365, at *12 (Tex. App.—Dallas Aug. 20, 2021, pet.

–26–

denied) (mem. op.) (evidence was sufficient to meet requirements of *Yowell* where attorney "testified to a reasonable 'blended' hourly rate, considering his normal billing rate and the rates other lawyers in the firm with less experience, and a 'reasonable amount of time' for each level of appeal."). LDE presented no such evidence here.

Connor's affidavit does not include a reasonable hourly rate to be charged for the appellate work or an estimate of how many attorneys would be necessary to perform the appellate work, their hourly rates, or a reasonable blended rate to take into account the uncertainty of which attorneys and paralegals would be on LDE's appellate team. General affidavit testimony like Connor's is legally insufficient to support an award of conditional appellate fees.[11] We, therefore, sustain MRT's second issue to the extent we reverse the awards of conditional appellate attorney's fees. However, because attorney's fees were authorized but the evidence was legally insufficient to support the amounts awarded, the proper remedy is to reverse the awards of conditional appellate fees and remand the issue of appellate attorney fees to the trial court for redetermination. *Hizar*, 672 S.W.3d at 804.

---

[11] Connor's testimony is also deficient because he does not explain if he is familiar with the reasonable and necessary fees for appellate work or how he has such knowledge. In Paragraph 7 of his affidavit, he states his knowledge of reasonable and customary rates in Texas is "particularly fees charged in litigation." Connor does not mention his familiarity with the reasonable customary rates charged for appellate work in Texas.

## CONCLUSION

Under this record, we conclude the trial court did not err by awarding LDE attorney's fees pursuant to PSA 1. The trial court did, however, abuse its discretion by awarding LDE conditional appellate fees. Accordingly, we reverse the award of conditional appellate fees, remand for redetermination of the amount of appellate fees to be awarded, if any, related to the proceeding in this Court and redetermination of conditional appellate fees to be awarded, if any, in the event of further proceedings in the Texas Supreme Court. We affirm the final judgment in all other respects.

230574f.p05

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

MRT OF KEMP TX–SNF, LLC,
Appellant


No. 05-23-00574-CV          V.


LLOYD DOUGLAS
ENTERPRISES, LC AND LLOYD
DOUGLAS, INDIVIDUALLY,
Appellees

On Appeal from the 86th Judicial
District Court, Kaufman County,
Texas
Trial Court Cause No. 105670-86.
Opinion delivered by Justice Partida-
Kipness. Justices Pedersen, III and
Carlyle participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part.

We **REVERSE** those portions of the trial court's judgment awarding Appellee Lloyd Douglas Enterprises, LC conditional appellate fees.

We **REMAND** for redetermination of the amount of appellate fees to be awarded, if any, related to the proceeding in this Court and for redetermination of conditional appellate fees to be awarded, if any, in the event of further proceedings in the Texas Supreme Court.

We **AFFIRM** the final judgment in all other respects.

It is **ORDERED** that each party bear its own costs of this appeal.


Judgment entered this 5th day of September, 2024.